Case 21-02097-TPA    Doc 163    Filed 12/20/21    Entered 12/20/21 13:05:49    Desc Main
Document    Page 1 of 10

FILED
12/20/21 11:25 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ALL MATTERS RELATED TO NORTH AMERICAN REFRACTORIES COMPANY, et al. in Case No. 02-20198, as affected by the May 24, 2013 Order Entering Final decree entered at Doc. No. 7940,<br>*Debtors* | : : : : : : : | Misc. Case No. 15-204-TPA |
| NORTH AMERICAN REFRACTORIES ASBESTOS PERSONAL INJURY SETTLEMENT TRUST,<br>*Plaintiff*<br><br>v.<br>HONEYWELL INTERNATIONAL, INC.,<br>*Defendant* | : : : : : : : : : | Adv. No. 21-2096-TPA<br><br>Related to Doc. No. 116 |

---

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC.,<br>*Plaintiff*<br><br>v.<br>NORTH AMERICAN REFRACTORIES COMPANY PERSONAL INJURY SETTLEMENT TRUST,<br>*Defendant* | : : : : : : : : : | Adv. No. 21-2097-TPA<br><br>Related to Doc. No. 118 |

## MEMORANDUM OPINION AND ORDER

*Appearances:*  John LaBarbera, Esq., for TIG Insurance/Everest Reinsurance Company
Ronald K. Anguas, Jr., Esq., for Honeywell International, Inc.
Sander I. Esserman, Esq., for NARCO Personal Injury Settlement Trust

Before the Court for consideration is a ***Motion to Intervene of TIG Insurance Company and Everest Reinsurance Company*** ("Motion"). The same *Motion* was filed in both

adversary proceedings at the document numbers noted in the above caption. All of the current Parties to the adversaries have filed Responses opposing the *Motion*. The Movants then sought permission from the Court to file a Reply, which was granted. On December 13, 2021, argument on the *Motions* was heard. For the reasons explained below, the *Motions* will be denied.

The adversary proceedings involve a dispute between Honeywell International, Inc. ("Honeywell") and the North American Refractories Company Asbestos Personal Injury Trust ("Trust") as to the claim evaluation procedures being used by the Trust and as to the extent of Honeywell's audit and other rights with respect to the Trust. The Trust appears to be unique among asbestos settlement trusts that have been created pursuant to *11 U.S.C. §524(g)* in that it was not funded by a one-time, definite amount, but rather is funded on an "evergreen" basis. According to the Trust terms Honeywell is obligated to make certain annual payments to the Trust based on claims paid by the Trust each year, up to a maximum annual amount that started at $100,000,000 when the Trust was created and is currently fixed at $145,000,000.

The Movants, TIG Insurance ("TIG") and Everest Reinsurance ("Everest"), are successors to insurance companies that issued insurance policies to companies that were predecessors to Honeywell. Honeywell sought coverage under those policies as a potential source of funds that could be used toward Honeywell's obligation to the Trust. The end result was the consummation of two settlement agreements, one between Honeywell and Everest executed on or about February 9, 2004 (the "Everest Agreement," a copy of which is attached to the *Motions* as

2

Exhibit A[1]), and one between TIG and Honeywell executed on or about June 28, 2007 (the "TIG Agreement," a copy of which is attached to the *Motions* as Exhibit B). The Everest Agreement and the TIG Agreement will be collectively referred to as the "Settlement Agreements." The Settlement Agreements need not be described in detail for present purposes; it will suffice to say that they obligate Everest and TIG to make certain payments to Honeywell, which payments are to be solely used by Honeywell to pay toward indemnity or defense of asbestos claims. Everest and TIG believe that the issues to be decided by the Court in these adversaries are directly related to issues under the Settlement Agreements and are seeking to intervene either as of right or permissively under *Fed.R.Bankr.P. 7024*, incorporating *Fed.R.Civ.P. 24(a)(2)* and *24(b)(1)(B)*.

### *(1) Intervention of Right*

Looking first at intervention as of right, the relevant *Rule* provides:

> (a) Intervention of Right**.**  On timely motion, the court must permit anyone to intervene who:
> ...
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

*Fed.R.Civ.P. 24(a)(2)*. Four requirements must be satisfied for an intervention under this provision: (1) the application for intervention must be timely; (2) the applicant must have a sufficient interest

---

[1] Another insurance company named Mt. McKinley Insurance Company is also a party to the Everest Agreement, and is apparently also a predecessor-in-interest to TIG, but that is irrelevant to the Court's analysis here.

in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and, (4) the interest is not adequately represented by a party already in the litigation. *See, Benjamin ex rel. Yock v. Department of Public Welfare of Pennsylvania*, 701 F.3d 938, 948 (3d Cir. 2012). It is not disputed that the *Motions* were timely filed, but the other three elements are all disputed. Movants, as the parties seeking intervention, bear the burden of proof as to the disputed elements. *See, e.g., Parcel Tankers, Inc. v. M/T Stolt Luisa Pando*, 1992 WL 52934 (E.D. Pa. March 5, 1992) (denying intervention where movants failed to meet their burden of proof), *Pierson v. U.S.* 71 F.R.D. 75, 78 (D. Del. 1976) (the burden of proof, especially in a risk of nonpersuasion sense (as distinguished from the burden of going forward), is upon one seeking intervention," citing cases).

As to whether the applicant for intervention possesses a sufficient interest in the outcome of the suit, the interest must be one that is "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). To be significantly protectable, the applicant's interest must be a "legal interest as distinguished from interests of a general and indefinite character." *Id.*, 400 U.S. at 531. The applicant must show that there is a tangible threat to a legally cognizable interest in order to intervene. *Id*. Generally, a simply economic or pecuniary interest in the outcome of the litigation is insufficient to permit intervention. *See, e.g., Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). An intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund, but the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene. *Id.*

The Court is not persuaded that the Movants have a sufficient interest in the outcome of the adversary proceedings to have a right to intervene. It must first be stressed that the Trust is not a party to the Settlement Agreements.[2] Those Agreements are only between Honeywell and the Movants. The relationship between Honeywell and the Trust, which is at the center of these adversary proceedings, is not affected by the Settlement Agreements in any way. Honeywell has a financial obligation to the Trust which exists separate and apart from the Settlement Agreements and which would remain in effect even if the Settlement Agreements were never made and even if Honeywell never received a dime from the Movants. That being said, it is also clear that the interest of the Movants here in the litigation, if any, is solely economic – entirely limited to how much they must pay to Honeywell under the terms of the Settlement Agreements. As the applicable case law provides, however, a simple economic interest in the outcome of the litigation is insufficient to permit intervention. There is no specific fund which is at issue in the litigation, so the Movants cannot rely on that "exception" to the general rule that a mere economic interest is insufficient.

Indeed, it is not even clear to the Court how much of an economic interest the Movants have in the adversary proceedings. The *Motions* state:

> 48. Both actions have a material impact on both Honeywell's and the Insurers' past and going-forward obligations to fund the Trust. Thus, Insurers have a direct financial interest in these actions and Insurers seek to intervene to protect those interests.

*Motions* at ¶48. This indicates that the Movants are looking to recover past payments that they have

---

[2] At the time of the December 13th hearing an attorney for the Trust noted that upon review of the proffered Settlement Agreements the Trust was not even "noticed" as to their existence at the time of entry by Honeywell and TIG.

made to Honeywell under the Settlement Agreements which they believe were improper. This is confirmed by the proposed complaint that they have attached as an exhibit to their *Motions*, which as its first item of "relief sought" is for an order directing Honeywell to return funds that were paid under the Settlement Agreements. However, Honeywell has explicitly disclaimed any intent to seek relief in these adversary proceedings related to any past acts by the Trust and has indicated that it is seeking prospective declaratory relief only. *See,* Order of December 15, 2021 at ¶1, Doc. No. 161 in Adv. No. 21-2097 ("Honeywell has agreed that it is seeking prospective relief only in this action and not "damages" for past actions of the Trust or any relief that would undo past actions of the Trust. The Court will hold Honeywell to these representations.") Thus, to the extent the Movants seek any recovery or setoff from Honeywell for payments previously made under the Settlement Agreements they do not even have an economic interest in this litigation because the Court will not be making any relevant determinations in that regard. The failure of the Movants to meet their burden of proof as to the second element for intervention by right would be a sufficient basis in itself for the Court to stop here, but for the sake of completeness it will proceed to consider the remaining two elements anyway.

The third element requires a showing that the interest of the Movants may be impaired by the outcome of the adversary proceedings. The Movants have clearly failed to meet their burden of proof as to that element as well. They admit that if intervention is denied they "could seek a totally separate declaration of their rights and obligations under the Settlement Agreements pursuant to the dispute resolution provisions in the Settlement Agreement." *Motions* at ¶52. They further concede that this Court's decisions in the adversary proceedings "might" not be binding on them if they are not parties. *Id*. The Court itself would go further in that regard and

6

opine that under basic principles of *res judicata* such decisions will not be binding on the Movants if they are not parties.

The only potential impairment that the Movants have pointed to is the *stare decisis* effect that an adverse ruling by this Court might have on them were they to seek relief against Honeywell in another proceeding. While Movants have cited to several cases in which a potential *stare decisis* effect has been found sufficient to meet the impairment element under *Rule 24(a)(2)*, the Court does not find it sufficient under the facts and circumstances presented here. The court in *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560 (D. Del. 1981) provided a good summary of when a potential *stare decisis* effect would support intervention of right, stating:

> Intervention of right has been granted in some actions for damages where the stare decisis effect of the first action would be its sole effect upon the proposed intervenor's ability to protect its interests. The practical impairment test is not met, however, in every case where there might be some possibility that the decision in that action would have an effect by virtue of stare decisis on a subsequent suit that might be brought by the proposed intervenor. Certain additional exceptional circumstances must be present which would give the decision in the first action compelling persuasive force in the second. For example, a stare decisis effect has been found to constitute sufficient impairment to meet the Rule 24(a)(2) impairment test where, if he were not allowed to intervene, the proposed intervenor might be forced to present identical issues of law and fact to the same court in a later action ... However, where the proposed intervenor would be likely to present its case to a different court in a parallel system, such as a state court, in a later action, or where the identical issues of law and fact are not controlling, the effect of stare decisis will not be enough to support intervention under Rule 24(a)(2) ...

89 F.R.D. at 569. The Movants have not shown the sort of "exceptional circumstances" that would give any decision by this Court a compelling persuasive force in a separate proceeding involving

Movants and Honeywell. Such a proceeding is highly unlikely to be presented before this Court due to a lack of jurisdiction.[3] It would instead be presented before a state court, or some other federal court. Moreover, the Settlement Agreements provide that they are to be construed and interpreted in accordance with state law (New Jersey law in the Everest Agreement and New York law in the TIG Agreement), whereas the Court in the adversary proceedings will be applying federal and/or Delaware law. Thus, any possible *stare decisis* effect of decisions by this Court is likely to be minimal if at all in a separate proceeding involving the Movants and Honeywell and is not sufficient to meet the impairment element under *Rule 24(a)(2)*.

Finally, the Movants have not met their burden and persuaded the Court that any interest they may have in the adversary proceedings is not being adequately represented by Honeywell. Honeywell's obvious interest in these cases is to see that the Trust observes the proper standard under the Trust documents when evaluating claims, rather than some lesser standard that results in the payment of claims that would not have been paid under the proper standard. It would seem that this interest aligns very closely with the interest of the Movants,[4] and in fact the Movants

---

[3] The parties agree that the standard for post-confirmation, related-to jurisdiction of a bankruptcy court in the Third Circuit is the "close nexus" test as set forth in *In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004). Any conceivable dispute between the Movants and Honeywell involving the Settlement Agreements cannot meet this test because it would not affect the bankruptcy estate and will not interfere with the implementation of the confirmed plan or the operation of the Trust. As noted previously, Honeywell's obligation to fund the Trust remains unaffected by the outcome of any dispute between it and the Movants. The Movants pointed to provisions in the Settlement Agreements which they claim would require a Movant-Honeywell dispute to be heard by this Court, but the parties to an agreement cannot create bankruptcy court jurisdiction where it does not exist. 372 F.3d at 161.

[4] Or at least with the interest of Everest since under the Everest Agreement there are provisions which condition Everest's obligation to pay Honeywell on proper claim processing by the Trust. The TIG Agreement does not appear to have any similar provision, leaving the Court to wonder whether TIG has any real interest at all in the adversary proceedings.

acknowledge as much in Paragraph 57 of the *Motions*. They go on, however, to argue that their interests diverge from Honeywell's with respect to the proceeds of the insurance policies, Honeywell's performance under the Settlement Agreements, and the Movants' ongoing obligations in light of the allegations made in the adversary proceeding complaints. *Id* at ¶¶57-59. But none of those things are at issue in the adversary proceedings and the Court will make no determination as to any of them so they are irrelevant to the consideration of intervention.

### (2) *Permissive Intervention*

As an alternative to intervention of right the Movants seek to intervene permissively under *Fed.R.Civ.P. 24(b)(1)(B)*, which provides that on timely motion a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. It is well-recognized that such permissive intervention is discretionary with the Court. *See, e.g., U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (stating that appellate courts are "reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention"). *Fed.R.Civ.P. 24(b)(3)* directs that in exercising its discretion the Court is to consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The Court finds that allowing permissive intervention would unduly delay or prejudice the rights of the Parties. As has been noted by the Court on numerous occasions during these proceedings, it has put this case on a fast track for a number of reasons, including most importantly the fact that decisions made here will have an impact on asbestos claimants and their

families. To that end, the Court has imposed a shorter period for discovery than would likely have been permitted in another setting for litigation of similar scope and complexity, and indicated a limit for the time that will be allotted for trial. To introduce what amounts to a collateral dispute involving only one of the Parties into the litigation would only exacerbate what is undoubtedly already a very hectic schedule they are facing to complete discovery and prepare for trial, thereby potentially prejudicing the rights of those original Parties.

There is also a separate reason for denying permissive intervention, namely that the Court believes it likely lacks jurisdiction to hear and decide the dispute between Honeywell and the Movants, as explained in footnote 2, above. While this lack of jurisdiction could be overcome if intervention of right had been established, it is an absolute impediment to permissive intervention. *See, e.g., F.T. Int'l, Ltd. v. Mason*, 2003 WL 21993859, at *1 (E.D. Pa. May 2, 2003) (unlike intervention as a right which can rest on ancillary jurisdiction, permissive intervention pursuant to *Fed.R.Civ.P. 24(b)* requires independent federal jurisdictional grounds.)

*AND NOW*, this **20th** day of **December, 2021**, for the reasons stated above, it is **ORDERED, ADJUDGED** and **DECREED** that the *Motions* are **DENIED**.

_____ asg
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve;
    Ronald Anguas, Esq.
    Michael Kruszewski, Esq.
    Sander Esserman, Esq.
    Gavin Fung, Esq.
    David Ross, Esq.    John D. LaBarbera, Esq.
    Gary Nelson, Esq.    Kennedys
    George Snyder, Esq.    100 North Riverside Plaza, Ste. 2100
    Jodi Hause, Esq.    Chicago, IL 60606