# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>ALL MATTERS RELATED TO NORTH AMERICAN REFRACTORIES COMPANY, et al. in Case No. 02-20198, as affected by the May 24, 2013 Order Entering Final Decree entered at Doc. No. 7940<br>    Debtors | Misc. Case No. 15-00204-TPA<br><br><br><br>Chapter 11 |
| HONEYWELL INTERNATIONAL INC.,<br>    *Plaintiff*,<br>    v.<br>NORTH AMERICAN REFRACTORIES COMPANY ASBESTOS PERSONAL INJURY SETTLEMENT TRUST,<br>    *Defendant*. | Adv. No. 21-2097<br><br><br>Related to Doc. Nos. 241 & 246 |

## HONEYWELL INTERNATIONAL INC.'S RESPONSE TO THE NARCO SETTLEMENT TRUST'S MOTION TO COMPEL

Honeywell opposes the NARCO Settlement Trust's motion to compel. Honeywell has made substantial productions to the Trust on all issues germane to the case, including the three issues raised in the Trust's motion. Consistent with the Court's prior guidance, Honeywell has taken a practical approach and agreed to provide the Trust with tens of thousands of documents—as well as access to the Bendix database—for approximately 40,000 claimants who sought recovery both in Bendix litigation and from the NARCO Trust. The Trust nevertheless seeks hundreds of thousands of additional, unnecessary records that go beyond the reasonable scope of discovery. Honeywell has complied with its discovery obligations by any measure of

proportionality, and at this phase of the case, the Trust is simply overreaching and causing unnecessary expense and delay. The Trust's motion should therefore be denied.

## PRELIMINARY STATEMENT

1. Honeywell has worked cooperatively with the Trust to resolve outstanding discovery disputes, and it has produced a significant amount of information responsive to the Trust's requests. In the last two months, Honeywell has produced over 45,000 documents totaling over 1.3 million pages, and it has agreed to produce or has produced (i) information concerning approximately 40,000 Bendix claims; (ii) backup calculations relating to Dr. Francine Rabinovitz's 2006 expert report; and (iii) 55 boxes of post-petition settlement materials. The Trust nevertheless continues to seek Bendix data and documents for an ***additional*** 210,000 Bendix claimants who never filed a claim with the NARCO Trust; all of the internal files of Dr. Rabinovitz, an expert who advised Honeywell for years but whose expert report in this matter was issued in 2006; and an unspecified number of additional documents concerning Honeywell's post-petition settlements, which are stored in hard copy in over 3,300 boxes located in multiple storage facilities. These demands are unduly burdensome and not proportional to the needs of the case, particularly on the expedited pre-trial schedule for this litigation.

2. Contrary to the Trust's assertion, Honeywell has not refused to provide access to documents and data relating to the Bendix database. It has already produced or offered to provide:

- a downloadable extract of the database for all Bendix claims where the claimant also filed a claim with the NARCO Trust, approximately 40,000 in total;
- a document listing the various fields in the database that contain relevant claimant-related information;
- the underlying files previously collected for 5,000 of those overlapping claims (totaling over 31,000 documents);
- information relating to the process by which Honeywell previously collected those underlying files;

2

- a set of the digitized litigation-related files for the remaining 35,000 overlapping claims (to the extent they are already contained within the database);
- a sampling of non-digitized litigation-related files for the remaining 35,000 overlapping claims;
- access via web portal to the Bendix database for all 40,000 overlapping claims; and
- a list of claimants in the ACCLAIM database and related exposure information.

*See* Trust Ex. 9 (1/5/22 R. Anguas Ltr. to J. Baio at 2–4); HON Ex. B (1/28/22 R. Anguas Ltr. to J. Baio at 4). Despite Honeywell's willingness to provide all of the above, the Trust insists on Honeywell producing information relating to ***210,000*** additional Bendix claims where the claimant never filed a claim with the NARCO Trust.

3. Honeywell has also searched for and produced material related to the expert report of Dr. Rabinovitz. As Honeywell has explained to the Trust on numerous occasions, Dr. Rabinovitz did not produce or otherwise identify work papers or reliance materials during the bankruptcy proceedings more than fifteen years ago, although the report itself includes detailed data tables and descriptions of the report's methodologies. Nor is Dr. Rabinovitz able at present to identify any additional reliance materials or non-privileged work papers, given that she is unavailable. Nonetheless, in response to the Trust's document requests, Honeywell conducted a reasonable search of the files from Dr. Rabinovitz in its possession, identified backup calculations for her report, and produced them to the Trust. At this point—more than fifteen years after the report was written and with its author unable to guide us—Honeywell has made a reasonable, good-faith effort to produce what it believes were the backup files for that report. The material Honeywell has from Dr. Rabinovitz was collected in 2015, nearly ten years after her expert report was submitted. There is nothing in these documents that is labeled or otherwise identifiable as reliance materials. Nor is this material exclusively related to Dr. Rabinovitz's expert report; much of it pre- or post-dates her report by several years. The Trust never requested in discovery that

3

Honeywell produce all the material it collected from Dr. Rabinovitz in 2015. And in any event, Dr. Rabinovitz's report thoroughly identifies the data and assumptions she relied on in estimating that the Trust would pay between $550 million to $1.29 billion in future claims on a discounted basis.[1]

4. With respect to post-petition settlements, Honeywell has offered to produce to the Trust what it requested. These materials relate to mass settlement agreements Honeywell entered into with several law firms during the pendency of the bankruptcy, before the Trust even became effective. Those agreements provided a process by which the law firms' clients could submit then-current claims for payment. The Trust has the settlement agreements but is now demanding individual claim documents submitted as far back as twenty years ago. The documents submitted as part of that process are archived in hard copy in 3,354 boxes across multiple third-party storage facilities. Those materials are not relevant to this litigation because claims processing for the NARCO Trust is governed by the TDP, not these agreements. Nonetheless, on December 17, 2021, Honeywell offered to produce a sample of this material to the Trust, and it subsequently provided both an index of the boxes and a list of their locations. *See* Trust Ex. 11 (12/24/21 R. Powell Ltr. to P. DiSanto at 2); Trust Ex. 13 (1/27/22 R. Powell Ltr. to P. DiSanto at 1). On January 18, 2022, the Trust asked Honeywell to scan and produce 55 boxes. HON Ex. A (1/18/22 P. DiSanto Email to R. Powell). Honeywell is willing to do so. As it explained to the Trust, however, Honeywell would in the ordinary course review the material before producing it in litigation to determine whether it contains privileged or personal identifiable information. Because

---

[1] In its motion, the Trust erroneously states that Dr. Rabinovitz estimated liability at "approximately $2.3 billion" but that was only the high end of an undiscounted range; the low end of that undiscounted range was under $1 billion. Dr. Rabinovitz also estimated that the range applying an appropriate discount rate was between $0.55 billion and $1.29 billion.

4

that type of review process is not feasible given the timeframe for this litigation, Honeywell proposed that the Trust and Honeywell enter into an agreement under which Honeywell's privilege is not waived and claimants' personal identifiable information would remain protected. Trust Ex. 13 (1/27/22 R. Powell Ltr. to P. DiSanto at 2). Rather than agree to that compromise, or even meaningfully respond to it, the Trust filed the instant motion.

5. Although Honeywell has attempted to resolve these discovery disputes by providing or agreeing to provide the Trust with tens of thousands of documents as well as data on tens of thousands of Bendix claimants, the Trust continues to press for the full scope of its requests, which are overly burdensome, not proportional to the needs of the case, and seek irrelevant material. The timing of this motion is also a problem of the Trust's own making. In some instances in December and January, the Trust waited more than two weeks to respond to Honeywell's proposals to address these issues. With respect to the Bendix material, Honeywell has produced or agreed to produce a significant amount of material relating to overlapping NARCO/Bendix claims, but the Trust continues to press for material relating to claimants that never filed a claim with the NARCO Trust. As the Trust is aware, it takes time to collect, review, and produce litigation material associated with the Bendix database, which contains privileged and personal identifiable information. The Trust nevertheless contends that producing *all of* the Bendix material imposes no burden on Honeywell because the Trust has previously requested that information from Honeywell. But the burdens associated with any review for production remain, regardless of whether the Trust has previously requested certain information. As for the Trust's requests for additional information relating to Dr. Rabinovitz's 2006 expert report, Honeywell has explained to the Trust that Dr. Rabinovitz did not identify reliance materials when she issued the report in 2006 and cannot do so now. Honeywell has searched for and produced the identifiable backup

5

calculations and work papers in its possession. To the extent the Trust now demands that Honeywell review for production all the material it collected from Dr. Rabinovitz in 2015, that request is untimely, overbroad, and not proportional to the needs of the case. The Trust never served a discovery request for that material and both parties have largely focused their document requests on material from 2016 onward. Further, Honeywell cannot simply turn over these documents without a review for privilege. Dr. Rabinovitz was an expert consultant who performed work at the direction of counsel for many years, meaning that many of her files are privileged. And with respect to post-petition settlements, Honeywell has already agreed to give the Trust what it requested. The Trust's motion is unnecessary and should be denied.

## BACKGROUND

6. Honeywell agrees that the Trust served Honeywell with requests for production on October 5 and November 10, 2021. Honeywell responded to those requests on November 24 and December 10, 2021, respectively. Since then, the parties have met and conferred on various discovery topics, and they have resolved most of their disagreements. With respect to the three issues raised in the Trust's motion to compel, Honeywell has already produced or agreed to produce a significant amount of material in response to the Trust's requests.

**A. Bendix Materials.**

7. Honeywell initially objected to the Trust's sweeping requests for material from the Bendix and ACCLAIM databases. Honeywell has since agreed to produce data and documents concerning all of the approximately 40,000 Bendix claimants who also submitted claims with the NARCO Trust. Beyond that, the additional material from the Bendix database is either irrelevant or not proportional to the needs of the case.

8. Following guidance from the Court at the December 13, 2021 hearing, Honeywell worked cooperatively with the Trust on its requests for Bendix material. Before the deadline for

the Trust's Bendix demand, Honeywell provided the Trust with a detailed description of the scope and structure of the Bendix database. *See* Trust Ex. 9 (1/5/22 R. Anguas Ltr. to J. Baio at 1). It also previewed for the Trust its willingness to provide (i) a downloadable extract of all relevant fields from the database for overlapping Bendix/NARCO claims; (ii) the underlying files for individual claimants that Honeywell previously collected; and (iii) a sample of litigation files for additional Bendix plaintiffs that also submitted a claim to the NARCO Trust. *Id.* at 2. In its December 22, 2021 demand, the Trust largely ignored the information Honeywell had provided and issued its own sweeping requests for documents and information. Nevertheless, Honeywell attempted to be responsive to the Trust's demand and offered additional information in its January 5, 2022 response. Specifically, Honeywell:

- offered to produce a list of the fields in the Bendix database;

- explained the process by which Honeywell identified overlapping NARCO/Bendix claims;

- agreed to identify and produce other digitized litigation-related materials in the database, subject to privilege and PII review;

- offered to provide access to the database for overlapping claims, so long as the Trust and its counsel provided information about cybersecurity insurance and protocols given the sensitive medical information and PII in these files. (The Trust has not yet provided either); and

- answered the Trust's interrogatory-style questions, including by providing a description of the process by which Honeywell collected litigation materials for the 5,000 claims. *See* Trust Ex. 9 (1/5/22 R. Anguas Ltr. to J. Baio at 3–4).

9.  As outlined above, Honeywell did not, as the Trust contends, "refuse[] to produce two of the three requested categories of Bendix Materials" in its January 5, 2022 response. Honeywell agreed, as the Trust acknowledges, to produce the underlying litigation materials previously collected for 5,000 claims; an extract of the database; and a mutually agreeable sampling of the underlying litigation materials for the remaining overlapping claims, which

7

number in the tens of thousands. Trust Ex. 9 (1/5/22 R. Anguas Ltr. to J. Baio at 2). As for the ACCLAIM database, Honeywell asked for additional information regarding the Trust's request for access, given that the program is outdated and that Honeywell previously exported ACCLAIM data to the Trust. *Id.* at 5. The Trust provided additional information regarding its request in its January 20, 2022 letter, and Honeywell is now producing claimant and exposure information from ACCLAIM. *See* HON Ex. B (1/28/22 R. Anguas Ltr. to J. Baio at 4).

10.     On January 22, 2022, Honeywell provided the Trust with a detailed extract from the Bendix database. HON Ex. C (1/22/22 R. Anguas Ltr. to S. Lombardi at 1). That extract includes non-privileged fields in the database that Honeywell uses in the ordinary course and believes contain relevant claimant-related data. In its January 5, 2022 response, Honeywell described the extract as including all "relevant fields from the database," except for fields that may contain privileged information, work product, or the settlement values for Bendix claims. Trust Ex. 9 (1/5/22 R. Anguas Ltr. to J. Baio at 2). By using the term "relevant," Honeywell meant only that it was not including in the extract fields that it does not use in the ordinary course, such as system-related fields or internal processing fields. Had the Trust not waited fifteen days to respond to Honeywell, or otherwise expressed concern with the term "relevant fields," Honeywell could have corrected the Trust's misunderstanding—and avoided the need for unnecessary motions practice on this issue. Honeywell is willing, however, to provide the Trust with a list of additional fields that it does not use in the ordinary course and are not included in the extract. Honeywell is also willing to meet and confer with the Trust, to the extent there are particular fields that the Trust believes it needs that are not privileged or contain privileged information. The Trust's remaining objections to the database extract are without merit. The settlement values for Bendix claims are confidential, commercially sensitive, and irrelevant to the issues in this litigation. And the Trust's

8

contention that Honeywell has not yet "committed" to providing access to the database is misleading. Because the database contains sensitive information about claimants, Honeywell asked the Trust to provide information regarding the Trust's and its counsel's cybersecurity protocols and insurance. Trust Ex. 9 (1/5/22 R. Anguas Ltr. to J. Baio at 3). In its January 20, 2022 letter, the Trust agreed to provide at least some of that information, but it has not yet done so as of the time of this filing. *See* Trust Ex. 8 (1/20/22 J. Baio Ltr. to R. Anguas at 2).

11. It appears that the parties previously miscommunicated on the Trust's request, but Honeywell intends to provide the Trust with information regarding the process by which it sampled approximately 5,000 claims for review. In prior correspondence, Honeywell understood the Trust to be asking for a description of the process by which Honeywell *collected* the underlying litigation materials for those claims. Trust Ex. 5 (12/22/21 J. Baio Ltr. to J. Calandra at 2); Trust Ex. 8 (1/20/22 J. Baio Ltr. to R. Anguas at 3). Honeywell provided a detailed description of that collection process in its January 5, 2022 response. In its January 20, 2022 letter, the Trust briefly referenced the "process by which [Honeywell] *selected* the 5,000 claimants for which it has digitized files," but then referred back to its request for additional information about Honeywell's *collection* process. Trust Ex. 8 (1/20/22 J. Baio Ltr. to R. Anguas at 3 (emphasis modified)). In its January 28, 2022 letter, Honeywell asked the Trust to describe what additional information the Trust was seeking with respect to that request. Had the Trust corrected Honeywell's understanding in the three weeks since Honeywell served its Bendix response, the parties could have worked to resolve the issue without Court intervention. In any event, information about Honeywell's sampling process is expert analysis, which Honeywell intends to provide to the Trust in accordance with the schedule for expert disclosures. At that point, the Trust will have the opportunity to review the expert report and depose the expert. Setting that aside, the Trust's need for a description

9

of Honeywell's process now is superfluous: Honeywell has expressed its willingness to provide the Trust with access to the database for the full set of 40,000 overlapping claims. That access enables the Trust to assess the full universe of overlapping claims and make arguments about whether Honeywell's sampling process was appropriate.

### B. Rabinovitz Materials

12. On November 10, 2021, the Trust sought materials relating to Dr. Rabinovitz's 2006 expert report. Trust Ex. 2 (11/10/21 Trust's Second Set of Requests for Production at 11). Honeywell objected on December 10, 2021 but offered to meet and confer on those requests. HON Ex. D (12/10/21 Honeywell Responses and Objections to Second Set of Requests for Production at 3–4). The Trust, however, did not raise the issue until January 7, 2022, nor has it been able to identify what material it needs in addition to the detailed assumptions and calculations already provided in the 2006 report itself. *See* Trust Ex. 6 (1/7/22 P. DiSanto Ltr. to R. Powell at 3); Trust Ex. 13 (1/27/22 R. Powell Ltr. to P. DiSanto at 2). As Honeywell has explained, the parties to the bankruptcy did not produce expert discovery or identify reliance materials. And Dr. Rabinovitz is unavailable to identify reliance materials at this time. The material collected from Dr. Rabinovitz in 2015 consists of mostly hard-copy documents, and many of those documents appear privileged on their face or post-date her report. Despite those issues, Honeywell has produced backup calculations related to Dr. Rabinovitz's 2006 report that it has been able to locate within the materials it has collected, which constitute the non-privileged material that Honeywell reasonably believes to be responsive to the Trust's requests. *See* Trust Ex. 13 (1/27/22 R. Powell Ltr. to P. DiSanto at 2).

### C. Post-Petition Materials

13. Honeywell agrees that the Trust has sought all documents concerning post-petition settlement materials, which, in Honeywell's view, are peripheral to the issues in this case. As

Honeywell has told the Trust for years, the post-petition settlement material, which is from as far back as twenty years ago, is archived in thousands of boxes at various storage locations, and it contains privileged material and sensitive personal information like social security numbers. *See, e.g.*, Trust Ex. 11 (12/24/21 R. Powell Ltr. to P. DiSanto at 2).

14. In response to the Trust's request, Honeywell has produced an index of all the boxes, a list of their locations, and a small set of files that were previously digitized for insurers. Trust Ex. 10 (1/14/22 R. Powell Ltr. to P. DiSanto at 4).

15. Although Honeywell continues to believe that the post-petition settlement materials are not relevant to the issues in this case, it is also in the process of digitizing the material in the 55 boxes requested by the Trust on January 18, 2022. Because these files contain privileged and personal information, which Honeywell would in the ordinary course review and redact, Honeywell asked the Trust to propose an agreement to protect such information and thereby enable Honeywell to produce this information as quickly as possible. Trust Ex. 13 (1/27/22 R. Powell Ltr. to P. DiSanto at 2). The Trust has not done so and now appears to take the position that the Protective Order is sufficient. *See* Trust Mot. to Compel ¶ 15. It is not. For example, although the Protective Order covers the ***inadvertent*** production of privileged information, *see* Confidentiality Stipulation and Protective Order ¶ 6.2 (Doc. 123), the Trust is asking Honeywell to produce a set of documents—at least some of which Honeywell believes to be privileged—without a review for privilege. Honeywell believes a supplemental agreement is necessary given that privileged material will likely be produced here. The Trust's refusal to consider a confidentiality agreement to streamline production of such sensitive material is not reasonable.

## ARGUMENT

16. Honeywell agrees that a party moving to compel bears the burden of proving the relevance of the material it seeks, and that the objecting party bears the burden of demonstrating

11

the discovery sought is unduly burdensome or not proportional to the needs of the case. In Honeywell's view, an assessment of the burden and proportionality of discovery requests must take into account the case schedule.

### A. Honeywell Has Produced Extensive Information Relating to Bendix Data And Documentation.

17. In its complaint, Honeywell alleges that the Trust is violating the TDP and the Trust Agreement by allowing claims to be paid absent the required exposure evidence. As one way to illustrate the Trust's failure to adhere to the strict standards set out in the TDP, Honeywell provided examples where claimants' exposure evidence was inconsistent with evidence submitted in the tort system. By definition, the only claimants that could be identified by Honeywell as submitting inconsistent exposure evidence with the NARCO Trust are those that filed a claim with the NARCO Trust. Claimants that did not file a claim with the NARCO Trust are irrelevant to the question of whether the Trust is paying claims on insufficient evidence.

18. Honeywell identified NARCO Trust claims with inconsistent exposure evidence by identifying those claimants that submitted claims to both the NARCO Trust and to Bendix. The Trust contends that it needs access to "the same information as Honeywell" to "effectively defend itself against Honeywell's accusations." But Honeywell is offering to provide the Trust access to data relating to all 40,000 of the overlapping claims.

19. The Trust's representation that Honeywell "has not provided a straightforward answer" to why it will not provide Bendix information is doubly inaccurate: Honeywell has provided an extensive amount of Bendix information where it overlaps with the NARCO Trust; to the extent Honeywell has not produced in response to certain aspects of the Trust's requests, it has explained in detail why those requests are unduly burdensome, not proportional to the needs of the case, and seek irrelevant information.

20. Honeywell has not previously expended the resources to identify which Bendix claimants among the 210,000 also resolved NARCO claims under post-petition settlements for a simple reason: those claimants did not submit a claim to the NARCO Trust and therefore provide no insight into whether the Trust is paying claims in compliance with the TDP and the Trust Agreement. The Trust bears the burden of showing the relevance of overlapping Bendix and post-petition settlement claims. *See Thuy Vo v. Gilmore*, No. 18-1364, 2019 WL 7049913, at *2 (W.D. Pa. Dec. 23, 2019) ("A party moving to compel discovery bears the initial burden of proving the relevance of the requested information."). It has not met that burden in this motion or otherwise. Nor could it. Claims settled under post-petition settlement agreements are governed by those agreements, not the TDP, which had not yet been adopted.

21. Contrary to the Trust's representations, Honeywell has offered to produce much more than "documents relating to only approximately 5,000 Bendix plaintiffs that also filed a NARCO claim." As explained in detail above, it has produced or agreed to produce tens of thousands of documents, as well as access to data, relating to all 40,000 overlapping Bendix/NARCO claims.

22. Honeywell acknowledges the relevance of some Bendix-related information, but that hardly means **all** Bendix materials are a "central pillar of its complaint." In identifying inconsistencies with claims submitted to the NARCO Trust, Honeywell used its Bendix database only to identify individuals who both submitted claims to the NARCO Trust and brought a Bendix claim, after which Honeywell obtained materials relating to those Bendix-matched claimants from local Bendix counsel. Honeywell has offered to provide the Trust access to all 40,000 overlapping claims. That does not render the remaining 210,000 Bendix claims that have nothing to do with NARCO relevant—let alone "central"—to the issues in this case.

23. The Trust incorrectly insists that the production of information relating to all 250,000 Bendix claims is not burdensome because the Trust has requested this information before. As already explained, Honeywell is producing documents relating to all 40,000 overlapping claims, as well as access to the database for those claims. If, as the Trust submits, it previously requested this information "for the purpose of informing its claims processing," Honeywell's current offer fulfills that purpose. The fact that the Trust has previously requested Bendix material does not make it practical or feasible for Honeywell to collect, review, and produce documents relating to the remaining 210,000 Bendix claims unrelated to NARCO during the expedited discovery period.

24. The Trust's objections to the database extract are also unfounded. First, the Trust misunderstands what Honeywell meant by "relevant" data fields. The extract includes database fields that Honeywell uses in the ordinary course and believes include claimant data, but excludes technical, system-related, or internal processing fields. Honeywell has also agreed to produce a list of fields in the extract, including those withheld for privilege or attorney work product, as well as a list of fields that Honeywell does not use in the ordinary course. If the Trust objects to any of the withheld fields, the parties can meet and confer. Second, Bendix settlement values are not relevant to the issues in this litigation. Honeywell identified overlapping Bendix claims solely for the purpose of assessing inconsistencies in the exposure evidence provided to the NARCO Trust. The amount a particular Bendix claimant was paid to resolve a claim in the tort system says nothing about whether the evidence that same claimant submitted to the NARCO Trust meets the requirements of the TDP. And given the sensitive nature of this information and its irrelevance to this litigation, there is no reason to produce that information to the parties in this case, which

include plaintiffs' attorneys who pursue asbestos claims against Honeywell and other defendants in the tort system.

25. As Honeywell previously explained, it is willing and plans to provide the Trust with its expert analysis regarding the sampling process for the 5,000 claims at the designated time for expert disclosures. The Trust will then have the opportunity to review that expert analysis and depose the expert during the expert discovery period.

26. The Trust's motion to compel the production of "the Bendix Materials in their entirety" is not reasonable or proportional to the needs of this case. Honeywell has already provided the Trust with substantial information about and from the Bendix database to the extent relevant to this case, and the Trust fails to explain why that information is insufficient or inadequate, especially given the compressed schedule of this litigation.

**B. Honeywell Has Produced Material Relating to Dr. Francine Rabinovitz's Report.**

27. Honeywell admits that Honeywell filed the expert declaration from Dr. Rabinovitz in support of a plan of reorganization for NARCO. Using NARCO's experience in the tort system and other assumptions detailed in her report, Dr. Rabinovitz estimated the number and value of claims the NARCO Trust would pay through 2050. She concluded that "[t]he discounted value for future qualifying claims ranges from $0.55 billion to $1.29 billion, using a net discount rate of 3%" and "the undiscounted value of these claims ranges from a low value of $0.98 billion to a high value of $2.28 billion." Trust Ex. 15 (Decl. of Dr. Rabinovitz ¶ 6).

28. As the Trust's motion indicates, Dr. Rabinovitz's expert declaration and report thoroughly identifies and explains the bases of her conclusions regarding NARCO liability.

29. Honeywell agrees that Dr. Rabinovitz's report does not state that claims supported by "form affidavits" would not be paid, or that the "TDP had more stringent evidentiary requirements than the tort system or NARCO's settlements." But that observation is neither

15

surprising nor does it support the Trust's motion. Dr. Rabinovitz based her estimates on NARCO's experience in the tort system; she was not asked to, nor did she opine on what types of evidence the NARCO Trust could consider under the TDP's requirements. There is simply no basis for the Trust to suggest that discovery from Dr. Rabinovitz would be probative as to what type of evidence is acceptable under the TDP.

30. In its motion, the Trust suggests for the first time that it needs discovery relating to Dr. Rabinovitz's report to defend the Trust's acceptance of form and check-the-box affidavits. The Trust fundamentally misunderstands the nature of Dr. Rabinovitz's report. As the Trust admits in the prior paragraph, Dr. Rabinovitz did not opine as to the types of evidence that the Trust would accept. For purposes of the calculations used in the report, she simply assumed that the Trust would pay claimants at a rate similar to the rate NARCO paid in the tort system. In order to confirm that the documents collected from Dr. Rabinovitz in 2015 do not bear on the question of "form affidavits," Honeywell electronically searched those materials for documents containing the terms "form affidavit" and "check-the-box." Neither returned any hits.

31. As outlined above, Dr. Rabinovitz's report itself explains in detail how she calculated the estimates and sets forth her underlying assumptions. Dr. Rabinovitz did not evaluate what type of evidence would be acceptable under the TDP in making her estimate. The Trust has not substantiated a need for further discovery on this point.

32. The Trust insists that its requests are not burdensome or disproportionate given the relevance of what it calls "the Rabinovitz Materials." The Trust's relevance arguments are unpersuasive because, as illustrated by the report itself, Dr. Rabinovitz did not consider what types of evidence the Trust could accept when she made her projections.

33. There is nothing illogical about the fact that Honeywell does not have a full set of materials related to an expert report issued in 2006. Dr. Rabinovitz did not previously identify reliance materials in the bankruptcy, and her files in Honeywell's possession do not otherwise indicate what, if anything, constitutes reliance materials. The Trust points to "representations" made by Honeywell's counsel at McDermott Will & Emery (MWE), but it fails to cite any document where MWE stated that it had located and agreed to produce Dr. Rabinovitz's reliance materials. And as Honeywell has explained to the Trust, the materials that MWE collected in 2015 do not contain readily identifiable reliance materials.

34. The Trust does not identify any support for its claim that MWE located Dr. Rabinovitz's reliance materials. All the Trust cites is a 2016 letter from the Trust's counsel, which notes that at the time "[MWE] had not yet thoroughly evaluated the volume of material [it] collected from Dr. Rabinovitz and so [it] had not yet made a determination on the search term issue." Trust Ex. 16 (3/25/16 M. Freimuth Ltr. to A. Kratenstein at 1). The Trust appears to be asking now, for the first time, for all the material collected in 2015. Late-breaking, overbroad requests like this are inappropriate. The Trust asserts that the material may be responsive to its Request for Production No. 2, which sought documents "concerning NARCO claim projections, estimates, or analyses provided to or relied upon by [Honeywell] in connection with [its] SEC filings." Trust Ex. 2 (Trust Second Set of Requests for Production at 11). The Trust's citation to its Second Request No. 2 is misleading. That request sought material from 2017 to the present. *Id.* at 6 ("Unless otherwise indicated, the time period covered by these Requests for Production is January 1, 2017, to the date of [Honeywell's] response."). The documents MWE collected in 2015 (and which were, by definition, generated before then) are outside the relevant time period and are not responsive. Even if the material were responsive, Honeywell cannot simply turn it over

17

without review. Dr. Rabinovitz was an expert consultant to Honeywell for many years and performed numerous analyses at the direction of counsel and therefore many of her documents are likely to be privileged or attorney work product. To be clear, Honeywell has otherwise fulfilled its discovery obligations with respect to the Trust's Second Request No. 2 by searching the files of its internal employees responsible for preparing Honeywell's public filings where Honeywell accrues for the NARCO liability, and it has produced responsive, non-privileged material. In response to this and other requests, Honeywell has also produced its internal employees' non-privileged discussions of Dr. Rabinovitz's report.

35. Honeywell has already produced the work papers it identified in the documents collected from Dr. Rabinovitz.

**C. Honeywell Is Producing What the Trust Requested With Respect to the NARCO Post-Petition Settlement Files.**

36. Honeywell's post-petition NARCO settlements are not "highly relevant" to interpreting the TDP. Those agreements and the TDP are separate and distinct. But setting that issue aside, the Trust's insistence on access to potentially thousands of archived boxes of documents in the limited period available for discovery is not proportionate to the needs of this case. The Trust already has the post-petition settlement agreements, and it is able to assess the terms and standards contained in those agreements as compared to the TDP.

37. Honeywell has agreed to provide the Trust what it requested in its January 18, 2022 email: digitized files from 55 boxes containing post-petition materials. Given the time constraints facing the parties, it is not feasible or practical for Honeywell to review those files for privilege and PII, which is why Honeywell asked that the Trust enter into a separate confidentiality agreement to ensure that information remains protected, but the Trust is inexplicably unwilling to consider that compromise. The Trust also objects to Honeywell's suggestion that its production

18

of 55 boxes of materials should satisfy the Trust's request on this score. Again, given the time constraints in this case, the Trust has to be reasonable and practical in the discovery it presses. Trial is set to begin in less than four months, and it is not the time to pull, review, digitize, and produce over 3,300 archived boxes of irrelevant (or, at best, minimally relevant) paper documents.

38. The Trust's insistence that the parties' Protective Order is sufficient to protect Honeywell's privilege and claimants' personal information is without basis. As already explained, the Protective Order by its terms covers only the inadvertent disclosure of privileged information, but here Honeywell reasonably believes that the material the Trust seeks contains privileged information. Given the time constraints, Honeywell is willing to forgo review of the material in favor of producing it promptly, subject to a supplemental confidentiality agreement that ensures that Honeywell's privileged information and claimants' personal information in these files remains secure. It is not clear to Honeywell why the Trust is not amenable to such an agreement.

39. Honeywell continues to believe that the Trust's request for 55 boxes is not proportional to the needs of this case, especially given the minimal relevance of this material and the relatively short window before this case is to proceed to trial. Honeywell is nevertheless working to produce this material to the Trust. Honeywell cannot, however, continue to field additional requests for an unspecified amount of additional post-petition settlement material on the current schedule.

40. As Honeywell has already explained, the information that the Trust seeks is irrelevant to the issues in this litigation, and the fact that the Trust has previously requested it is of little to no persuasive value.

## CONCLUSION

41. The Trust's motion to compel is unnecessary and unwarranted. Honeywell has been producing and will continue to produce a reasonable set of materials that are responsive to

19

the Trust's requests. But given the compressed timeline, the Trust should be practical and work in good faith with Honeywell to identify a targeted set of the most relevant material for production on a sensible timeline and in a secure manner. The Court should deny the Trust's motion.Dated: February 3, 2022

| | |
|---|---|
| KIRKLAND & ELLIS LLP | MCDERMOTT WILL & EMERY LLP |
| Craig S. Primis, P.C.<br>(admitted *pro hac vice*) | Peter John Sacripanti<br>NY State Bar No. 1970581<br>NJ State Bar No. 026281984 |
| Ronald K. Anguas, Jr.<br>(admitted *pro hac vice*) | D.C. Bar No. 414801<br>(admitted *pro hac vice*) |
| 1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: (202) 389-5000<br>Facsimile: (202) 389-5200 | John J. Calandra<br>NY State Bar No. 2473601<br>(admitted *pro hac vice*)<br><br>One Vanderbilt Avenue |
| Mark McKane, P.C.<br>(admitted *pro hac vice*) | New York, New York 10017-3852<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444 |
| 555 California Street<br>San Francisco, CA 94104<br>Telephone: (415) 439-1400 | QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.<br><br>*/s/ Michael P. Kruszewski* |
| Nicole L. Greenblatt, P.C.<br>(admitted *pro hac vice*) | Michael P. Kruszewski<br>(Pennsylvania Supreme Court ID #91239) |
| 601 Lexington Avenue<br>New York, NY 10022<br>Telephone: (212) 446-4800 | Arthur D. Martinucci<br>(Pennsylvania Supreme Court ID #63699)<br><br>2222 W. Grandview Blvd.<br>Erie, Pennsylvania 16506<br>Telephone: (814) 833-2222<br>Facsimile: (814) 833-6753<br>amartinucci@quinnfirm.com<br>mkruszewski@quinnfirm.com |

*Counsel for Honeywell International Inc.*