# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Misc. Case No. 15-00204-TPA |
| ALL MATTERS RELATED TO NORTH AMERICAN REFACTORIES COMPANY, et al. in Case No. 02-20198, as affected by the May 24, 2013 Order Entering Final Decree entered at Doc. No. 7940 | Adv. No. 21-2097 |
| | Adv. No. 21-02097 |
| Debtors | |
| HONEYWELL INTERNATIONAL INC., | |
| Plaintiff, | |
| v. | |
| NORTH AMERICAN REFRACTORIES COMPANY ASBESTOS PERSONAL INJURY SETTLEMENT TRUST, | |
| Defendant. | |

**TIG INSURANCE COMPANY, EVEREST REINSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, AND UNITED STATES FIRE INSURANCE COMPANY'S OPPOSITION TO THE NORTH AMERICAN REFRACTORIES COMPANY ASBESTOS TRUST ADVISORY COMMITTEE AND THE FUTURE <u>CLAIMANTS' REPRESENTATIVE'S REQUEST TO SEAL</u>**

Pursuant to this Court's April 29, 2022 Order, TIG Insurance Company ("TIG"), Everest Reinsurance Company ("Everest"), The North River Insurance Company, and United States Insurance Company (collectively, the "Public Access Proponents"), respectfully submit this Memorandum of Law in Opposition to the North American Refractories Company Asbestos Trust Advisory Committee ("TAC") and the Future Claimants' Representative's ("FCR") Request for

an Order Sealing Certain Information.

**PRELIMINARY STATEMENT**

1. The North American Refractories Company Asbestos Trust (the "Trust") processes thousands of claims each year, all of which allege exposure to certain NARCO asbestos-containing products. The TAC represents all holders of claims with the Trust and FCR represents holders of claims with the Trust that have yet to accrue. The TAC is a committee comprised of attorneys from law firms Baron & Budd P.C., Cooney & Conway, Kazan McClain, Satterley & Greenwood, PLC, Goldberg, Persky & White, P.C., Motley Rice, LLC, and Weitz & Luxenberg, all of which specialize in plaintiff's asbestos claims.

2. The TAC and FCR have oversight responsibilities with respect to the operation of the Trust. The Trust owes duties under its agreement with Honeywell with regard to the manner in which the claims are processed.

3. Public Access Proponents seek to ensure that they and the public have a full and accurate understanding of the events occurring in this proceeding, including the actions, motivations, and interests of the claimants to the extent that evidence is adduced, for whom the Public Access Proponents may be asked to pay as insurers of defendants in the tort system or debtors in other past, pending, or future chapter 11 proceedings.

**BACKGROUND**

4. On the proverbial eve of an upcoming public trial, the TAC and FCR filed a motion seeking "an order precluding the filing of documents, or admission at trial of evidence, containing identifying information regarding law firms that represent individual claimants, and instead requiring that such information be redacted." ECF No. 333. While the Movants did not brief the request in their motion, they stated in a footnote that the parties had agreed to "redact from filings

and exhibits offered into evidence any information identifying an individual claimant, such as name, address, and social security numbers." ECF 333 at 2, n. 1. In their recent "partial withdrawal" of their motion, the TAC and FCR again seek to have the Court confirm that agreement and order the sealing of claimant information. This request is improper for several reasons, not least of which is that it contravenes the strong public policy favoring access to judicial records and there has been no showing of any particularized harm to any individual claimant or the need to seal any specific document.

5. As the TAC and FCR contend, this case includes allegations of rampant fraud in the asbestos trust and tort system, improper conduct of plaintiff lawyers, and lawyers engaging in nefarious behavior. *See* ECF 333 at 5. Those claims, and the propriety thereof, go to the central concerns in this case and concern matters of public interest.

6. Asbestos trusts and plaintiffs attorneys have a history of seeking to evade transparency in the bankruptcy trust system. The underlying problem in asbestos claims practices, in particular, was brought to light in a similar case in the bankruptcy court for the Western District of North Carolina, *In re Garlock Sealing Techs., LLC*. In that case, the court entered an order finding that claimants' law firms systematically withheld exposure information in asbestos claims, often after the claimant swore that he had not been exposed to products for which other defendants were responsible. 504 B.R. 71 (Bankr. W.D.N.C. 2014). After reviewing the evidence, the court found that plaintiffs had withheld exposure evidence in "each and every one" of the pre-petition asbestos claims that it had sampled. *Id.* at 84. Indeed, in three of the cases the court reviewed, plaintiffs filed claims against trusts established by other asbestos defendants even after representing to a court of law in a different proceeding that they had never been exposed to those defendants' products. *Id*. at 85. The court found that, "on average plaintiffs disclosed only about 2 exposures

to bankrupt[] companies' products, but after settling with Garlock made claims against about 19 such companies." *Id*. at 84. The court concluded that the missing evidence "had the effect of unfairly inflating the recoveries against Garlock." *Id.* at 86.

7. Like the motion presented here by the TAC and FCR, immediately before the trial concerning estimation of claims in *Garlock*, the court was confronted with a motion to seal and exclude the public from portions of the upcoming estimation trial. During the trial, and after Legal Newsline reporter Thomas K. Kim was removed, along with the rest of the public, from the trial, Legal Newsline filed a motion to intervene and open the proceedings to the public. Ultimately, other interested parties including Ford Motor Company, Honeywell International Inc. ("Honeywell"), AIG Member Companies, Resolute Management Inc., Everest, and TIG (successor to Mt. McKinley Insurance Company) joined seeking access. The bankruptcy court initially denied the request for access, in part, because Legal Newsline had not challenged earlier attempts to seal information.[1] Ultimately, however, the District Court reversed that determination, noting that while protective orders may be appropriate for discovery, different standards apply to materials used in trial. As District Judge Max Cogburn observed, "the allegations in *Garlock* were of interest to the public, the press, and other still solvent enterprises that were subject to asbestos related claims and had dealings with these attorneys." *Legal Newsline v. Garlock Sealing Techs. LLC*, 518 B.R. 358, 361 (W.D.N.C. 2014).

8. Commenting on *Garlock*, the court in a later case noted, "The evidence uncovered

---

[1] The Official Committee of Asbestos Personal Injury Claimants in *Garlock*, which included present TAC members Motley Rice, LLC and Weitz & Luxenberg, argued that Legal Newsline "parachuted in with its motion in the midst of trial" and complained that, despite monitoring the proceedings "Legal Newsline did not come in to join the argument over [the] confidentiality order….. Legal Newsline did not intervene." *Legal Newsline v. Garlock Sealing Techs, LLC,* July 15, 2014 Tr. at 19-20, Ex. A to the Declaration of Eileen Bradley. The Public Access Proponents here are doing exactly what the Garlock TCC accused Legal Newsline of not doing.

- 4 -

in the *Garlock* case arguably demonstrates that asbestos plaintiffs' law firms acted fraudulently or at least unethically in pursuing asbestos claims in the tort system and the asbestos trust system." *Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*, No. BR 00-22876, 2015 WL 4773425, at *5 (W.D. Pa. Aug. 12, 2015). *See also*, Lester Brickman, *Fraud and Abuse in Mesothelioma Litigation*, 88 TUL. L. REV. 1071 (2014) (discussion of the fraud in mesothelioma litigation uncovered in the course of proceedings in the *Garlock* bankruptcy).

9. Since *Garlock*, "both courts and commentators have observed that a significant number of asbestos claimants in the tort system and in Chapter 11 proceedings have provided conflicting and/or inaccurate information regarding the asbestos products to which they were exposed, and sixteen states have passed asbestos claim transparency legislation." *See* United States Department of Justice Statement of Interest filed in *In re Bestwall* LLC, W.D.N.C., No. 17-31795, at 1, available at https://www.justice.gov/opa/press-release/file/1349406/download.  In its own filing, Bestwall, LLC likewise described instances where "asbestos plaintiffs, at a minimum, inconsistently and selectively disclosed exposure evidence to support or strengthen their cases against non-bankrupt companies." Informational Brief of Bestwall LLC, *In re Bestwall LLC*, No. 17-31795, 2017 WL 4988527, at 20 (Bankr. W.D.N.C. Nov. 2, 2017). *See also* Mealey's Litigation Report – Asbestos, A 2021 Look at Bankruptcy Trust and Transparency Issues in Asbestos Litigation, available at https://www.hpylaw.com/content/uploads/2021/05/A-2021-Look-At-Bankruptcy-Trust-And-Transparency-Issues-in-Asbestos-Litigation.pdf; Mealey's Litigation Report – Asbestos, A Look Behind the Curtain: Public Release of Garlock Bankruptcy Discovery Confirms Widespread Pattern of Evidentiary Abuse Against Crane Co., available at https://www.mccarter.com/files/Uploads/Documents/Ableman%20Commentary%C20Asbestos%C20Litigation%2011.4.15.pdf (noting a "similar pattern of systematic suppression of trust

disclosures [as] was documented in the Garlock bankruptcy" in a study of 1,850 mesothelioma lawsuits resolved between 2007 and 2011).

10. Like the Public Access Proponents, "the United States has long had a concern with transparency in asbestos bankruptcies and the appropriate resolution of claims filed in such proceedings." *See, In re Bestwall* LLC, Statement of Interest, *supra*, at 2-3.

11. The United States has filed objections to proposed plans of reorganization and disclosure statements in several asbestos bankruptcies seeking (1) to increase the transparency of trust operations and (2) to ensure that the requirements for submitting claims to post-confirmation trusts guarantee that only deserving claims receive compensation. *Id.* at 3. In a Statement of Interest filed in a similar case, *In re* Kaiser Gypsum Co., the United States Department of Justice lamented that secrecy regarding trust filings has made it "nearly impossible to detect when plaintiffs are seeking recovery based on factual representations that may be incompatible with other representations previously made in other litigation or before other trusts." Statement of Interest on Behalf of the United States of America, *In re* Kaiser Gypsum Co., Inc., No 16-31602 (JCW), at 8 (Bankr. W.D.N.C. Sept 13, 2018), available at https://www.justice.gov/opa/press-release/file/1093916/download.

12. A lack of transparency in the tort system and in the post-confirmation trusts established to pay asbestos claims has allowed certain claimants to file claims in multiple venues while making inconsistent representations regarding the products to which claimants were allegedly exposed. As the *Garlock* court concluded, this practice is "widespread and significant.*" In re Garlock Sealing Techs, LLC.*, 504 B.R. at 94.

13. The same problems observed by the court in *Garlock* are continuing to play out currently in bankruptcy courts across the country. For instance, late last year in *In Re Imerys*, Judge

Silverstein heard testimony that an asbestos claimant had their pre-petition suit against the debtor dismissed, prevailed at trial against another defendant on the basis that the "[claimant] was only exposed to asbestos through rope packing," but then had two separate asbestos plaintiff firms submit a ballot on behalf of the same claimant in a Chapter 11 proceeding. In questioning the situation Judge Silverstein stated "maybe there's a problem with the process? That's what I'm exploring here." *In re Imerys Talc America, Inc.*, September 20, 2021 Hrng Tr., (Bankr. D. Del., Case No. 19-10289), Ex. B to the Declaration of Eileen Bradley. Similarly, in an opinion disallowing over 15,000 votes cast in that case, Judge Silverstein noted that law firm Bevan & Associates had filed over 15,000 claims in the bankruptcy but "did not consult with any of his clients prior to voting on the Plan.…" *See In re Imerys Talc America, Inc.*, No. 19-10289, 2021 WL 4786093 (Bankr. D. Del., Oct. 13, 2021). The court found that Mr. Bevan also submitted claims on behalf of his clients in numerous other matters. *Id.* at *10. Judge Silverstein concluded:

> there are more fundamental issues at play here: the evidence raises significant questions as to whether any of Bevan & Associates' clients have a claim against any Debtor. What is crystal clear is that: (i) Bevan & Associates has a database of clients built up over the past thirty years, (ii) prior to voting, Bevan & Associates performed zero diligence to discern which of its clients, if any, had been exposed to talc, much less to Debtors' talc and (iii) Bevan & Associates submitted its Master Ballot without regard to whether any of its 15,713 clients had a Talc Personal Injury Claim as required to vote on the Plan. In other words, Bevan & Associates simply printed out a list of its clients in excel spreadsheet format and slapped it behind a Master Ballot.

*Id.* at *11.

14. Despite these concerns, some plaintiffs' firms continue to resist court ordered disclosures from their clients. For example, in the *Bestwall* case, the bankruptcy court in North Carolina ordered claimants to submit personal injury questionnaires intended to collect information sufficient to evaluate, among other things, whether a debtor's pre-petition practices provide sufficient information to support an estimation. This type of evidence is exactly what led to the

findings in the *Garlock* case. At least twenty-five claimants' firms have resisted providing the anonymized information required in the *Bestwall* case. Ultimately, the North Carolina bankruptcy court entered an order holding claimants that refused to submit the questionnaires in contempt. *See, In re Bestwall LLC*, No. 17-31795, ECF No. 2401 (Bankr. W.D.N.C., Feb. 10, 2022), Ex. C to the Declaration of Eileen Bradley.

15. Since the TAC and FCR filed their motion, multiple news outlets have reported on it, further indicating that (1) asbestos trust transparency is a matter of public interest and (2) the relief sought is extraordinary. *See,* Andrew Scurria, *Asbestos Lawyers Want Firm Names Scrubbed From Honeywell Bankruptcy Trial, Wall Street Journal Pro Bankruptcy,* (Apr. 29, 2022); Colleen Murphy, *Asbestos Trust Seeks to Redact Law Firm Names Ahead of Trial Over Alleged Claims Mismanagement*, *The Legal Intelligencer*, (Apr. 29, 2022); Matthew Santoni, *Asbestos Trust Seeks Redaction of Firms in Claims Dispute*, *Law360*, (Apr. 29, 2022).[2]

16. It is with this background of pervasive opacity in the world of asbestos trusts that the Public Access Proponents oppose the TAC and FCR's request for a sealing order and ask the Court to support the transparency required by Section 107 of the Bankruptcy Code ("Section 107").

## **THE MOTION AND REQUESTED RELIEF**

17. On November 18, 2021, the parties to this litigation filed a Confidentiality Stipulation and Protective Order, which was granted on December 2, 2021. ECF 333, ¶ 5. Since the Protective Order was entered, the Parties have produced thousands of documents and taken 23 depositions. *Id.,* ¶ 7.

18. In spite of this litigation being initiated over a year and a half ago and the glut of

---

[2] While these articles focused on redaction of law firm identities, as that was what the TAC and FCR briefed, undersigned counsel believes it would be equally newsworthy if the briefing in the initial motion matched the request set forth in the TAC and FCR's partial withdrawal.

discovery being exchanged between the parties to this litigation, on April 22, 2022, the TAC and FCR sought to redact information identifying the law firms and attorneys who submitted claims with the Trust.

19. On May 3, 2022, less than 24-hours before responsive briefing was due, the TAC and FCR filed a partial withdrawal of their motion. In their partial withdrawal, the TAC and FCR "maintain the request for an order confirming the agreement by Honeywell, the Trust, the TAC and the FCR as to the redaction of individual claimant identifying information from trial materials and filings, such as names, addresses, and social security numbers." While this request was set forth in the TAC and FCR's proposed order accompanying their April 22, 2022 motion to seal, it was not briefed. On that basis alone, the Court should deny the TAC and FCR's request. *See, e.g., Travillion v. Allegheny Cty. Bureau of Corr.,* No. CIV.A. 07-928, 2009 WL 774097, at *2 (W.D. Pa. Mar. 24, 2009) (noting that "the Court is not obligated to address arguments that have not been briefed.").

20. While this Court may enter an Order protecting the privacy and reputational interests of those not a party to this litigation, the TAC and FCR's request goes far beyond what is necessary: it seeks to redact all identifying information entirely from all documents without making reference to any specific document, evidence, or alleged harm. That a person submitted a claim to the Trust – particularly in a sea of thousands of claims – is not a privacy interest in need of protection. Moreover, the privacy interests of claimants already are adequately protected by Bankruptcy Rule 9037, which requires in relevant part that social security numbers other than the last four digits and individuals' birth dates be redacted. Fed. R. Bankr. Proc. 9037. The TAC and FCR seek relief well beyond this.

21. The TAC and FCR fail to meet the substantial burden the law imposes on them as

a precondition for withholding the identifying information of the persons who submitted claims to the Trust and therefore, their Motion must be denied.

## ARGUMENT

### I. THE TAC AND FCR FAIL TO DEMONSTRATE A NEED FOR SEALING

22. Under federal common law, there is a strong policy and presumption in favor of public access to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). This presumption is further codified in the Bankruptcy Code. Section 107 provides that, unless subject to an enumerated exemption, all papers filed in chapter 11 proceedings shall be open to the public. 11 U.S.C.A. § 107(a); *see also In re Wells Fargo Bank, N.A.,* No. MC 17-204-GLT, 2019 WL 642850, at *2 (Bankr. W.D. Pa. Feb. 14, 2019) (noting that, unless subject to one of Section 107's exceptions, Section 107 creates a presumption of public access to all documents filed with the Court).

23. The public right of access has two components: first, the right of access protects the public's ability to oversee and monitor the workings of the federal courts and second, public access promotes the institutional integrity of the judiciary. *Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 558 (W.D. Pa. 2014) (citations omitted). *See also, United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir. 1978) (holding that "[p]ublic confidence [in the judiciary] cannot long be maintained where important judicial decisions are made behind closed doors....").

24. The exceptions to the right of access provided under Section 107 are strictly circumscribed, reflecting the clear intent of Congress to make records in bankruptcy cases publicly available in all but specific, narrow circumstances. *Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 26 (2d Cir. 1994). *See also, In re Kunkel*, No. 01-25282REF, 2008 WL 783379, at *1 (Bankr. E.D. Pa. Mar. 25, 2008)'") (*citing* 2 Collier

on Bankruptcy ¶ 107.03 (Richard Levin and Henry J. Sommer eds., 15th ed.) ("'Any limitation on the public's right of access [to court records], however, must be viewed as an extraordinary measure that is warranted only under rare circumstances. Mere embarrassment, or harm to reputation based on nonscandalous, nondefamatory information disclosed is not sufficient cause to restrict public access.").

25. To justify a sealing order, the movant has the burden to demonstrate through evidence "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Akan v. Summers*, No. CV 17-89, 2019 WL 6270992, at *2 (W.D. Pa. Nov. 25, 2019) (*quoting Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 510 (1984).

### a. There Is No Scandalous or Defamatory Matter Justifying Sealing

26. Exceptions enumerated in the Bankruptcy Code permit sealing in limited circumstances to "protect a person with regard to scandalous or defamatory matter." 11 U.S.C.A. § 107(b)(2). However, "a filing does not fall within the section 107(b)(2) exception just because it may damage a person's reputation" *In re OneJet, Inc.,* 613 B.R. 841, 852 (Bankr. W.D. Pa. 2020) (*citing In re Gitto Global Corp.*, 422 F.3d 1, 16 (1st Cir. 2005) (determining that the test for defamatory material under § 107(b)(2) is whether the material (1) would alter the party's reputation in the eyes of a reasonable person, and (2) is untrue, or potentially untrue and irrelevant or included for an improper end)).

27. The fact that a person submitted a claim to the Trust is not defamatory or scandalous and there is no indication that the identity of the claimants is untrue. The claims submitted are not just relevant to this case, they <u>are</u> the issue in the case. If claimants are signing form affidavits without investigation or verification and the Trust's practice is to accept such affidavits, that

evidence would be relevant and significant. The Trust's pretrial statement shows, however, that it admits that certain law firms submit form affidavits and asserts there is nothing wrong with these practices. There can be no need for sealing when a party argues that its conduct, and that of related third parties, is appropriate.

      **b.    There Is No Undue Risk of Identity Theft or Other Unlawful Injury**

28.    Section 107(c)(1) states that, for cause, the bankruptcy court "may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property…." Absent a showing of a "clearly defined and serious injury," the Court must deny such a request. *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. New England Reinsurance Corp.,* No. 20-1872, 2020 WL 7663878 (3d Cir. Dec. 24, 2020) (upholding denial of sealing where there was no evidence of a "clearly defined and serious injury") (*citing In Re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019)). Indeed, the Third Circuit observed that the standard "begins with a thumb on the scale in favor of openness" and requires the party seeking to seal court records to show that disclosure will work "a clearly defined and serious injury." *In re Avandia Mktg.*, at 676. A court analyzing a motion to seal documents filed on a public docket must articulate "compelling, countervailing interests to be protected," make specific findings as to the effects of disclosure, and specifically delineate the injury to be prevented. *Id.* at 672. *See also, Pennsylvania Nat'l Mut. Cas. Ins. Co. v. New England Reinsurance Corp.,* 794 F. App'x 213 (3d Cir. 2019) (recognizing the standard set forth under *In re Avandia Mktg.* as controlling in motion to unseal).

29.    Importantly, it is the TAC and FCR, as the proponents of sealing, who bear the burden of demonstrating – "through evidence" – that the information should be protected. *In re*

*Selected Cases in Which Wells Fargo Bank, N.A., Seeks Relief Against Selected Debtor(s) and/or Ronda J. Winnecour,* 2019 WL 642850, at *2 (Bankr. W.D. Pa. Feb. 14, 2019); *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr. S.D.N.Y. 2007). To meet this burden of proof, the party seeking sealing "must demonstrate extraordinary circumstances and compelling need to obtain protection." *In re Wells Fargo Bank, N.A.,* 2019 WL 642850, at *2 (*citing In re Waring,* 406 B.R. 763, 768 (Bankr. N.D. Ohio 2009) and *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.,* 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016) ("Evidence—not just argument—is required to support the extraordinary remedy of sealing.").

30. The Court must "carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or a compelling need." *In re OneJet, Inc.*, 613 B.R. 848 (*citing In re Orion Pictures Corp.*, 21 F.3d 27). That information might "conceivably" or "possibly" fall within a protected category is not sufficient to seal documents. *In re Gitto/Global Corp.*, 321 B.R. 367, 374 (Bankr. D. Mass. 2005), *aff'd sub nom. In re Gitto Glob. Corp.*, No. CIV.A. 05-10334-DPW, 2005 WL 1027348 (D. Mass. May 2, 2005), *aff'd*, 422 F.3d 1 (1st Cir. 2005).

31. Against this backdrop of legal rights and policy considerations, the Court must consider whether TAC and FCR have made a sufficient factual showing to overcome the heavy statutory presumption in favor of access to bankruptcy proceedings. The Public Access Proponents submit that the TAC and FCR have not met this burden They have made no argument concerning claimant information. They have not identified any harm that might befall claimants, much less "a clearly defined and serious injury." The only argument – if it can be called that – for the sealing of claimant identifies is that the Trust and Honeywell agreed to do it. But the parties' agreement is irrelevant. In a similar situation in the 5th Circuit, the court criticized the use

of sealing *via* agreement, finding that the "'[p]roviding public access to judicial records is the duty and responsibility of the Judicial Branch.'" *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (quoting *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1134 (D.C. Cir. 2020)). The court explained the problems presented by private agreements to seal information, noting, "And because there is no sealing order, there is no sealing analysis—no reasons given, no authorities cited, no document-by-document inquiry. Instead, the parties wielded nigh-boundless discretion to label things confidential. And again, the secrecy they granted is 'perpetual' and 'wholesale.'" *Id.* at 420 (citations omitted).

32. Likewise, in *Legal Newsline v. Garlock Sealing Techs, LLC,* the court noted that the court is required to "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives…." 518 B.R. 358, 362 (W.D.N.C. 2014) (quoting *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 431 (4th Cir.2005)). The court continued:

> While designation of a document as "confidential" may well be the impetus for attorney requesting a court to seal a document, it is by no means an endpoint. Instead, the bankruptcy court was required to "show its work" by providing sufficient information concerning the reasons such exceptional relief was merited, which would have provided a basis for meaningful appellate review by this court as provided under *Media General*.

*Id.* at 362–63.

33. Given the total failure of the TAC and FCR to meet their burden to support the redaction of claimant information, their request, whether agreed or otherwise, should be denied.

## II. THE REQUESTED RELIEF IS TOO BROAD

34. Aside from the TAC and FCR's failure to demonstrate any basis for sealing, the blanket order requested is plainly overbroad. Even where a Section 107(b) exception applies, "[r]edacting documents to remove only protectable information is preferable to wholesale sealing." *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011). "The policy favoring public

access supports making public as much information as possible while still preserving confidentiality of protectable information." *Id.*

35. Remarkably, the TAC and FCR make no reference to any specific documents sought to be protected or even any category of documents sought to be protected. Rather, the TAC and FCR seek to remove claimant identifying information *such as* the names, addresses, and social security numbers of *every* person who submitted a claim to the Trust from *every* document – regardless of the content of the document or the reason for which it is presented. Again, a claim submitted to the Trust that bears the name of the person making such a submission, without more, is not defamatory or injurious. Nor have any claimants come forward to request such treatment even though this litigation and Honeywell's complaint have been public record for months.

36. Redacting *all* identifying information in *all* documents would go far beyond the scope of Section 107 and far beyond that of other courts facing similar requests. In *Garlock,* the court held that sealing the trial was "contrary to requirements of case law." Ultimately, consistent with Rule 9037, the court agreed to only to redact the following: Social Security numbers (except last four digits); dates of birth (except year); names of identifiable minors (except for their initials); financial account numbers (except last four digits); and medical information (except claimed disease, such as "mesothelioma," "asbestosis," or "lung cancer"). *See,* Order on Motion to Seal Materials in Record of Estimation Proceeding and Protocol for Redaction of Record, *In re Garlock,* No. 10-BK-31607, ECF No. 4195, Ex. D to Declaration of Eileen Bradley. The Public Access Proponents have no objection to the same relief here, which is largely required by Rule 9037 in any case.

37. Moreover, if there is a specific portion of a document as to which a specific claimant has an objection, that issue should be raised in connection with that document. The blunderbuss

approach proposed by the TAC and FCR has no basis in the Bankruptcy Code and flies in the face of the right to public access.

38. The TAC and FCR have not shown – or even attempted to show – a proper reason to redact the identities of the persons submitting claims to the Trust, have not shown harm would occur absent such a redaction, and have not proposed a sufficiently narrowly tailored request for relief. As such, pursuant to Section 107's presumption in favor of public access, the TAC and FCR's request must be denied.

## CONCLUSION

For each of the foregoing reasons, the Public Access Proponents respectfully request that the request for an order sealing the identities of persons who submitted claims to the Trust be denied.

Dated: May 4, 2022                               Respectfully submitted,

**KENNEDYS CMK, LLP**

*/s/ Eileen M. Bradley*
*/s/ Christopher Carroll*
Eileen M. Bradley
PA ID No.: 326457
Christopher Carroll
PA ID No.: 207906
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Phone: (267) 479-6700
Facsimile: (215) 655-8475
Eileen.Bradley@kennedyslaw.com
Christopher.Carroll@kennedyslaw.com

**IFRAH LAW**

/s/ *George R. Calhoun*
George R. Calhoun (*pro hac vice forthcoming*)
1717 Pennsylvania Ave., N.W., Suite 650
Washington, D.C. 20006
Phone: (202) 301-8440
Email: George@ifrahlaw.com