**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | |
| ALL MATTERS RELATED TO NORTH AMERICAN REFRACTORIES COMPANY, et al. in Case No. 02-20198, as affected by the May 24, 2013 Order Entering Final Decree entered at Doc. No. 7940 | Misc. Case No. 15-00204-TPA<br><br>Chapter 11 |
| Debtors. | |
| HONEYWELL INTERNATIONAL INC., | Adv. No. 21-2097 |
| *Plaintiff*, | |
| v. | |
| NORTH AMERICAN REFRACTORIES COMPANY ASBESTOS PERSONAL INJURY SETTLEMENT TRUST, | |
| *Defendant*. | |

## THE NARCO TRUST ADVISORY COMMITTEE'S AND FUTURE CLAIMANTS' REPRESENTATIVE'S POST-TRIAL BRIEF

The North American Refractories Company Asbestos Trust Advisory Committee ("TAC") and Future Claimants' Representative ("FCR"), submit the following post-trial brief, which incorporates by reference the Parties' Stipulated Facts, ECF No. 347.

## INTRODUCTION

1.     Twenty years ago, the North American Refractories Company filed for bankruptcy to protect Honeywell, and itself, from claims by individuals injured by NARCO asbestos products. At confirmation of the Plan that provided Honeywell with permanent protection from those asbestos claims, Honeywell committed to fund the Trust on an "evergreen" basis in an amount

potentially running to the billions of dollars. Honeywell itself estimated the Trust would pay up to $2.28 billion over its life. Stipulated Facts ¶ 23. Honeywell's estimation expert at confirmation explained to the Court that "[t]he estimate generally assumes that NARCO's future experience will be similar to its past experience in terms of rate of filings, type of filings and disqualification rate." Stipulated Facts ¶ 30. Honeywell also agreed to the essential terms of the Trust Agreement and Trust Distribution Procedures ("TDP"), terms then approved by creditors and this Court through confirmation of the NARCO Plan.

2.      Critically, the NARCO Plan set up a Trust to pay claims without the evidentiary burdens that accompany traditional litigation. May 23, 2022 p.m. 1 Hr'g Tr. 164:2-6[1] (John Calandra: "[The Trust] was set up to avoid the evidentiary burdens of taking depositions and going to trial and things of that nature for sure."). Honeywell gave up its right to challenge claimants' evidence in court. It gave up its right to have a jury or judge pronounce a verdict. As this Court noted at confirmation, the Plan "provides a definite path to recovery for those claimants with legitimate NARCO Asbestos Trust claims . . . without the intervening burdens of prosecution and proof in the tort system." Revised Mem. Op. and Order on Confirmation of 3rd Am. Plan, at Ex. 1 ¶ 331(d), *In re North Am. Refractories Co.*, No. 02-20198 (Bankr. W.D. Pa. Nov. 13, 2007), ECF No. 5507 ("Revised Mem. Op.").

3.      Since the Trust opened its doors in 2013, however, Honeywell has engaged in a pattern of obstructionism aimed at re-trading the deal it presented to this Court, its creditors and the FCR to obtain the protection of a section 524(g) channeling injunction. *See* May 25, 2022 p.m.

---

[1] Citations to hearing transcripts herein are to unofficial transcripts as official final transcripts were not available at the time of this filing.

Hr'g Tr. 81:21-82:22.  It has sued, litigated with, or threatened the Trust with lawsuits every year since 2014.  *Id.*

4.      This lawsuit is more of the same.  Violating the principle that the Trust pays claims without the burdens of litigation, Honeywell effectively seeks to litigate claims it agreed not to litigate, so it can avoid paying claims it agreed to pay.  It is attempting to reimpose the burdens of prosecution and proof in the tort system on the claimants by redefining the TDP's evidentiary requirements and how the Trust processes claims.

5.      At trial, Honeywell relied heavily on the testimony of its own attorney advocates who were responsible for negotiating the TDP, as well as for monitoring the Trust's processing of claims.  The trial showed that Honeywell's various complaints in its latest attempt to re-trade on the promises Honeywell made in the Plan are meritless.  Honeywell failed to meet its burden of proving that the TDP requires the Trust to impose heightened burdens on claimants, that the Trust has breached the TDP, or that the Trust has abused its discretion.

6.      Indeed, the trial made clear that, far from being wronged by any Trust actions, Honeywell is sitting pretty, paying far less than it ever thought it would.  Honeywell presented expert testimony that, even if the Trust continued the very claims processing practices Honeywell currently complains about, Honeywell would pay only a fraction of the amount it expected to at confirmation.  Dr. Jessica Horewitz, Honeywell's own estimation expert, testified that, using the current practices of the Trust as a baseline, she would expect the Trust to pay no more than $909 million, less than half the maximum Rabinovitz estimate Honeywell presented to this Court to get the NARCO Plan confirmed. *Compare* Courtroom Ex. 6 (Horewitz high estimate - $909 million) *with* Stipulated Facts ¶ 23 (Rabinovitz high estimate - $2.28 billion).  In short, Honeywell has reason to celebrate the Trust's performance, not sue the Trust.

7.     At trial, it also came to light that one of Honeywell's primary reasons for bringing this litigation was to pressure the Trust to accept a buyout of Honeywell's evergreen funding obligation.  *See* May 26, 2022 p.m. Hr'g Tr. 17:5-12.  While a buyout of Honeywell's obligations may in fact be a way forward for all the parties, Honeywell's desire for a buyout does not justify its failed claims here.

## I.     HONEYWELL FAILED TO DEMONSTRATE THAT THE TRUST'S POLICIES REGARDING THE LANGUAGE USED IN EXPOSURE AFFIDAVITS CONSTITUTE A BREACH OF THE TDP OR WERE AN ABUSE OF DISCRETION

8.     The dispute over form affidavits, check-the-box affidavits, and certain phrases from the TDP such as "regular basis" and "close proximity" has been ongoing amongst the parties since at least 2014.  *See* May 25, 2022 p.m. Hr'g Tr. 81:21-82:22.  At trial, the Trust demonstrated that it has attempted to engage with Honeywell in good faith on this issue and has implemented policies designed to ensure that claimants are held to the TDP standards while also allowing individual claims to be considered in their individual context.

9.     The Trust Agreement gives the Trustees "the power to take any and all actions that, in the judgment of the Trustees, are necessary or proper to fulfill the purposes of the NARCO Asbestos Trust."  Ex. A, Trust Agreement § 3.1(a).  As laid out in the TAC-FCR Issues of Law Brief, the discretion the Trustees were awarded to implement the TDP is broad, and an abuse of discretion as alleged by Honeywell requires a showing of bad faith or willful misconduct by the Trust.  *See* TAC-FCR Issues of Law Brief ¶¶ 5-8, ECF No. 336.  Honeywell makes no such allegation in this case.

### A.     Trial Testimony Demonstrated that Honeywell's Complaint Regarding "Form" Affidavits is Unrealistic

10.     Honeywell asks the Court to require the Trust to stop considering what have become known as "form" affidavits.  However, as the Court itself observed at trial, "form"

affidavits are a slippery concept that every individual in this case seems to define differently. May 24, 2022 p.m. 1 Hr'g Tr. 159:6-11. In fact, Yelena Bekker, Honeywell's counsel that surveils the Trust's claims-resolution process, testified that she does not know how form affidavits are identified, or what it means to be a form affidavit today. May 24, 2022 a.m. Hr'g Tr. 166:24-168:8. Rather, for years Honeywell has simply relied on the form identifiers assigned by CRMC. *Id*. Accordingly, Honeywell's only basis for claiming that all affidavits identified as the same form are identical is that CRMC assigned them the same form identifier. And as Sarah Wetherald of CRMC testified, the computer system at CRMC flags affidavits as potential "form" affidavits when they use more than a few words in an exposure definition that are identical to those in another affidavit. *See* May 26, 2022 a.m. Hr'g Tr. 142:6-143:15.

11.     It is important to note first that the TDP itself contains no prohibition on "form" affidavits and says nothing about whether affidavits have to avoid using words that other affidavits have used. The TDP simply says the Trust "may consider as evidence an affidavit of the claimant, an affidavit of one or more Co-workers or the affidavit of a family member in the case of a deceased claimant. . . ." TDP § 4.7(b)(3) (footnote omitted). And Mr. Zimmerman, Honeywell's principal TDP negotiator, freely acknowledged at trial that negotiations over the TDP did not include any discussion of "form" affidavits. May 23, 2022 a.m. Hr'g Tr. 127:19-21.

12.     When the Trust first adopted the Directives that addressed form affidavits as part of the Standstill Agreement in 2016, there were only five exemplar forms. May 25, 2022 a.m. Hr'g Tr. 104:22-105:12. Over time, as claimants have struggled to come up with additional ways to describe their exposure to NARCO products, more and more "forms" have been identified. Today, there are over 300 different form affidavits that CRMC identifies as such. May 24, 2022 a.m. Hr'g Tr. 60:12-14. This is not surprising given that thousands of claimants have submitted

claims to the Trust.  However, it does illustrate that Honeywell's demand to bar the Trust from considering exposure affidavits that contain language identical or substantially identical to other affidavits is unmanageable.

13.     Given that historically NARCO only produced 27 asbestos-containing products, it is not surprising that many of the Trust's thousands of claimants have described their exposure to NARCO's asbestos-containing products in the same way.  The same NARCO products are likely to be used in the same way, as the Court noted.  May 24, 2022 a.m. Hr'g Tr. 80:13-16.  For example, NARCO's Staz-On Insulating Cement was a dry powder that would come bagged and need to be mixed with water prior to use.  One of the examples of forms Honeywell introduced, Form 14, dealt with alleged exposure to Staz-On Insulating Cement.  *See* Ex. BR at 02206-02215.  Honeywell introduced five examples of Form 14.  *Id.*  Paragraph 7 in Form 14 states: "The asbestos-containing NARCO Staz-On Insulating Cement came in bags as a dry powder and had to be mixed with water prior to application."  *Id.*  There are only so many ways a product like Staz-On can be described.  A claimant can swap out synonyms for certain terms and move clauses around in the statement, but at the end of the day there are a finite number of ways to describe the use of and exposure to an asbestos-containing mixable cement.  Further, even if a claimant did slightly modify the language, Ms. Bekker claimed that the affidavit could still qualify as form.  *See* May 24, 2022 a.m. Hr'g Tr. 162:15-163:10.

14.     Honeywell apparently wants each new claimant to come up with a novel way to describe their exposure to asbestos products like bags of cement.  However, with the volume of claims submitted to the Trust and the fact that over 300 exemplar "forms" have been designated, Honeywell's request ultimately would force a claimant to come up with the 301st way to describe

their exposure to a NARCO asbestos-containing product, and then the next claimant to come up with the 302nd way, etc.

15.    And, of course, the fact that two affidavits use the same language does not preclude them from both being true and correct.  For example, the statement in Form 14 that "[t]he asbestos-containing NARCO Staz-On Insulating Cement came in bags as a dry powder and had to be mixed with water prior to application" is an objectively true statement, as Honeywell's counsel Yelena Bekker acknowledged.  May 24, 2022 a.m. Hr'g Tr. 160:16-161:15.  And the statement was true in all five examples of Form 14 Honeywell introduced into evidence.  *See id*. at 161:16-162:6. Given that Honeywell objects to all "form" language, Honeywell's demand that no two affidavits submitted to the Trust contain any identical or "substantially" identical language regarding exposure is potentially an impossible hurdle for claimants to clear.  An exposure standard that is nearly impossible for claimants to meet - and will become even more difficult as more and more claims are submitted – cannot be what the TDP intended.

**B.    The Trust's Claims Experience Demonstrates that Honeywell's Requested Relief Would Impair the Trust's Ability to Function and Harm Asbestos Claimants**

16.    Honeywell's demand that the Trust not consider form affidavits under any circumstance would obstruct claims processing and inevitably harm claimants.  In fact, that is exactly what historically occurred when the Trust adopted directives that complied with Honeywell's demands.

17.    Under the 2016 Directives issued with the Standstill Agreement, the Trust could not consider certain specified form affidavits.  Over time, that prohibition grew in scope.  *See* Ex. AA at 01160 (describing addition of more affidavits to 2016 Directives Exhibit B).  As Trustee Mark Gleason described, that created several unintended and unforeseen consequences for the Trust, including that claimants who had already passed away were deprived of their potentially

valid claims because they could not issue amended exposure affidavits.  May 25, 2022 a.m. Hr'g

Tr. 113:7-16.  Mr. Gleason further testified that, after operating under the 2016 Directives for a

while, it became clear to the Trustees that a blanket prohibition on "form" affidavits was overly

harsh, effectively shutting the door on potentially valid claims.  May 25, 2022 a.m. Hr'g Tr.

114:19-25.

18.     Mr. Gleason testified that as of December 2017, the Trust had been significantly

hobbled by the policies Honeywell demanded regarding form affidavits and the claimants' use of

language from the TDP.  At that time, 86 percent of claims submitted to the Trust were being

flagged as deficient, and 96 percent of those deficiencies were because the exposure affidavits

were being flagged as a form, or contained the terms "regular basis" or "close proximity."  May

25, 2022 p.m. Hr'g Tr. 9:8-10:3.  Effectively, the policy Honeywell demanded regarding form

affidavits nearly halted all claims processing (and accordingly, Honeywell's payment obligations).

19.     Conversely, the Trust's current Directives regarding form affidavits adopt a more

nuanced approach that takes into account the Trust's experiential knowledge and the individual

claimant's circumstances.  *See* Exhibit 260.  The first part is mechanical.  When a claim is

submitted to the Trust, each exposure affidavit is run through a software system that searches for

certain word combinations the affidavit may have in common with previously submitted affidavits.

May 25, 2022 a.m. Hr'g Tr.  125:11-126:2.  When the software finds sufficiently identical

language, it assigns a form number.  *Id*.; May 25, 2022 p.m. Hr'g Tr. 30:9-18.  At that point, a

claims processor will personally review the affidavit to confirm whether or not the affidavit in fact

qualifies as form.  May 25, 2022 p.m. Hr'g Tr. 30:9-18.

20.     But, fortunately, that is not the end of the story.  If the affidavit does in fact have

"form" language, the claims processor also looks for certain indicia of credibility contained within

the claim file that help the claims processor determine if the form affidavit should be considered. May 25, 2022 p.m. Hr'g Tr.  30:25-31:11, 32:11-33:18; Ex. 260 at 06151 (these indicia are laid out in paragraph 16(b)).

21.    Further, the current Trust Directives require that the entire claim file must be reviewed before any claim can be recommended for payment.  May 25, 2022 p.m. Hr'g Tr. 36:6-22; Ex. 260 at 06151 (paragraph 14).  Thus, any "form" language is just one of many factors that are considered when determining the credibility of exposure allegations.

22.    The Trust's holistic approach to weighing the evidentiary value of form affidavits is not only reasonable, but it also aligns with how Honeywell's principal TDP negotiator understands evidence should be weighed under the TDP.  Craig Zimmerman, the attorney who negotiated the TDP on behalf of Honeywell, agreed that whether or not an affidavit complies with the TDP's competence and credibility requirements must be determined in the context of the entire claim file submitted by the claimant.  May 23, 2022 a.m. Hr'g Tr. 141:28-21.  This is exactly what the Trust currently does: evaluate form affidavits in the context of the entire claim file and make individual determinations as to their credibility and competence.

23.    The sum of the evidence demonstrates that the Trust's policies regarding form affidavits fall within the Trust's zone of discretion.

## II.    THE TRUST'S RESPONSE TO HONEYWELL'S ALLEGATIONS OF INCONSISTENT EXPOSURE EVIDENCE WAS REASONABLE AND WITHIN THE TRUST'S DISCRETION

24.    Honeywell also accuses the Trust of breaching the TDP by accepting inconsistent exposure evidence from claimants in paying claims.  However, the evidence at trial told a different story.  As an initial matter, it is important to note that the exposure evidence that Honeywell claims demonstrates "inconsistencies" is not actually submitted to the Trust.  Rather, Honeywell has obtained that information through outside means and performed its own analysis, which

Honeywell has then shared with the Trust when and if it served Honeywell's purposes.  *See* Ex. 155 at 04177-04178; May 23, 2022 p.m. 2 Hr'g Tr. 15:18-16:13.

**A.  The Evidence of Alleged Inconsistencies Was Insufficient to Meet Honeywell's Burden**

25.    Honeywell's presentation at trial regarding its allegations of inconsistencies was meager, falling far short of the claims made in its Complaint and in filings earlier in the case.  To take just one example, late last year, Honeywell subpoenaed thirteen law firms, subjecting the subpoena recipients to significant expense and inconvenience.  The alleged purpose of these subpoenas was to demonstrate inconsistent statements allegedly being made by these law firms and the claimants they represent.  Honeywell's Opposition to the NARCO Settlement Trust's Motion for a Protective Order, at 2, ECF No. 148.  Despite obtaining thousands of pages of documents in response to these subpoenas and analyzing them for months, not a single document resulting from the subpoenas was used at trial.

26.    Honeywell only introduced a single claim file that they claim was paid and contained a material inconsistency.  Ms. Bekker testified about a claim where the exposure affidavit was executed by the injured party's personal representative.  May 24, 2022 a.m. Hr'g Tr. 97:2-98:2; Ex. CO.  Ms. Bekker claimed that, in the personal representative's deposition taken in another matter, the personal representative claimed to have no personal knowledge of what asbestos products her mother may have been exposed to, which she claimed was inconsistent with Exhibit CO.  May 24, 2022 a.m. Hr'g Tr. 98:16-101:1; Ex. CP at 4665.  However, this particular claim was paid by the Trust over 8 years ago, and before the Trust was aware of any potential inconsistencies in that or any other claim.  May 24, 2022 a.m. Hr'g Tr. 118:21-120:23.

27.    The only additional evidence of inconsistencies that Honeywell offered were letters Honeywell sent to the Trust identifying claims where Honeywell alleged it had located potential inconsistencies.  *See, e.g.*, Exs AO, AQ, AR, AS, AT, and AU.  Similar to the claim described

above, many of these claims were submitted many years ago and had already been paid by the time Honeywell provided this information to the Trust. May 23, 2022 p.m. 2 Hr'g Tr. 15:7-17:3.

28.     Even the inconsistencies Honeywell alleged in those letters did not withstand scrutiny.  Honeywell's expert, Louis Dudney, testified concerning some of the claims Honeywell asserted contain inconsistent exposure evidence.   Mr. Dudney focused on 15 claims that Honeywell had alerted the Trust to, and these claims were part of the reason a particular claimant firm was audited.  May 24, 2022 p.m. 1 Hr'g Tr. 165:8-19.  For each of the 15 claims, in litigation, the claimant had submitted interrogatory responses indicating that they had been exposed to Allied Signal products, and did not identify any NARCO product.  *Id*. at 167:10-24.  In the exposure affidavits those 15 claimants submitted to the NARCO Trust, the claimants identified a NARCO product.  *Id*.  However, as Honeywell stipulated and Mr. Dudney acknowledged, Allied Signal was Honeywell's predecessor and a former owner of NARCO.  Stipulated Facts ¶ 1 n.1; May 24, 2022 p.m. 2 Hr'g Tr. 46:11-16, 48:14-24.  As the Court itself pointed out, naming NARCO's former owner and then subsequently identifying a NARCO product is not inconsistent at all.  May 25, 2022 p.m. Hr'g Tr. 22:24-23:4.

29.     Honeywell's counsel and trial witness Mr. Calandra acknowledged that the Trust in fact took the information provided by Honeywell regarding potential inconsistencies and reached out to the firms who had submitted those claims, seeking explanations for the issues Honeywell had identified.  May 23, 2022 p.m. 2 Hr'g Tr. 26:10-27:19.  Firms provided substantive responses to the Trust's and Honeywell's questions.  *See id*. at 27:20-28:22.  And, as Mr. Calandra acknowledged, the Trust withheld payment on many claims to firms whose claims Honeywell had pointed out contained inconsistencies pending the completion of targeted audits of those firms, which the Trust initiated.  *See id*. at 28:23-29:20.

**B.      Honeywell Failed to Show the Trust's Reaction to Its Allegations Was an Abuse of Discretion**

30.      The evidence establishes that the Trust listened to Honeywell's concerns regarding potential evidentiary inconsistencies, requested additional evidence from Honeywell, investigated the issue on its own, and initiated targeted audits of the law firms involved.  May 23, 2022 p.m. 2 Hr'g Tr. 26:10-28:25.  The Trust's response to potential inconsistencies in claims submitted to the Trust was within the Trust's discretion.

31.      The TDP provides that the Trust may initiate targeted audits of law firms and/or claimants.  Ex. B, TDP § 4.8.  After Honeywell wrote to the Trust requesting that the Trust initiate a targeted audit of a particular firm, the Trust complied.  May 24, 2022 a.m. Hr'g Tr. 137:5-8.  In doing so, the Trust provided Mazars with the letters that Honeywell had sent to the Trust regarding alleged inconsistencies.  May 24, 2022 a.m. Hr'g Tr. 136:2-16; Ex. HQ at 08581.  Although Mazars found that Honeywell's concerns were justified in a few isolated cases, overall Mazars found that the Trust's payment decisions were supported by the evidence. *See* May 24, 2022 p.m. 2 Hr'g Tr. 34:12-35:4.

32.      Honeywell criticizes the Trust's audit program and the results of the audits Mazars performed.  Honeywell and its expert focused primarily on the fact that Mazars did not require audited law firms to turn over privileged information.  *See, e.g.*, May 24, 2022 p.m. 1 Hr'g Tr. 144:6-17.  However, all audits performed by Mazars were governed by the Claims Audit Procedures (the "CAP").  The CAP does not require the production of privileged information. Ex. AV ¶ B, at 01584.  And, as Honeywell's counsel admitted at trial, Honeywell agreed to the CAP's terms, including the carve-out for privileged information.  May 26, 2022 p.m. Hr'g Tr. 70:3-11. In fact, Honeywell agreed to the CAP's terms in 2017, which was well after form affidavits had arisen as a point of contention.  Since Honeywell agreed to audit procedures that excluded

privileged information, it should not be allowed to complain that such information was excluded from the audits.

33.     Further, the CAP's exclusion of privileged documents is a reasonable limit on the scope of audits.  The attorney-client privilege is "the oldest confidential communications privilege known to the common law" and documents within its scope are to be "zealously protected." *Haines v. Liggett Grp. Inc.*, 975 F.3d. 89-90 (3d Cir. 1992), *as amended* (Sept. 17, 1992); *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007). The privilege can only be waived by a client, not by the attorney nor the Trust.  *Haines v. Liggett Grp. Inc.*, 975 F.3d. at 90.  Requiring audited claimants to waive the privilege raises potential ethical and logistical issues, and risks unintended consequences, such as inadvertently chilling Trust submissions.  The scant evidentiary record proffered by Honeywell does not justify re-writing the CAP to meet Honeywell's demands.

**C.     Honeywell Offered Nothing to Suggest the Trust's Treatment of "Check the Box" Affidavits or Affidavits Containing the Words "Regular Basis" or "Close Proximity" Constitutes an Abuse of Discretion**

34.     The evidence offered at trial, and indeed stipulated to by the parties, showed that the Trust considers check-the-box affidavits only for significant occupational exposure, not as evidence of exposure to NARCO products. May 23, 2022 p.m. 1 Hr'g Tr. 40:13-16; Stipulated Facts ¶ 81.  None of the testimony at trial materially challenged this point or raised a significant question of an abuse of discretion.

35.     Likewise, with respect to affidavits that use the words "regular basis" or "close proximity"—words that appear in the TDP—the evidence showed that these words do not automatically satisfy any TDP requirements.  Ex. 260 at 06150.  Honeywell offered nothing to suggest this policy is an abuse of discretion.

### III.    THE TRUST HAS NOT ADOPTED A BLANKET REFRACTORY INFERENCE

36.    Honeywell's counsel Mr. Calandra agreed that the Trust can appropriately draw inferences from the totality of the evidence that is presented in a claim file.  May 23, 2022 p.m. 2 Hr'g Tr. 59:24-60:7.  Doing so is also consistent with the TDP.  Despite this, Honeywell argues that the Trust has breached a previous stipulation that emerged from the last round of litigation, which provided that the Trust would not, "*as a matter of blanket policy*, accept a bare assertion that the claimant worked around refractory products as sufficient to meet the exposure standard under the [TDP]."  Stip. & Order ¶ 5, *Honeywell Int'l Inc. v. N. Am. Refractories Co. Asbestos Personal Injury Tr., et al.*, No. 15-204 (Bankr. W.D. Pa. Mar. 13, 2016), ECF No. 376 (emphasis added).

37.    Mark Gleason, a NARCO Trustee, testified explicitly that the Trust has never adopted a blanket refractory policy.  May 25, 2022 p.m. Hr'g Tr. 43:6-20.  In fact, the only evidence introduced by Honeywell to support its claim that the Trust has adopted a blanket policy in violation of the Stipulation is a *single* claim file: Exhibit BU.  Ms. Bekker testified that Claim 1816680 was paid though it made no reference to any NARCO product. Mar 24, 2022 a.m. Tr. 103:3-23, 106:8-13.  Evidence of a single claim does not come close to meeting Honeywell's burden of proving a blanket policy.  Further, the single claim cherry-picked by Honeywell demonstrates a proper use of discretion by the Trust.

38.    At HON Tr. 02548-52, Claimant 1816680 attached an employment affidavit showing he worked at Minot Air Force Base from 1962 to 1963. Ex. BU at HON Tr. 02551.  This site and time period is on the NARCO Trust Worksite List.  May 24, 2022 a.m. Hr'g Tr. 153:6-20.  As established at trial, when a claimant identifies an Approved Worksite, the parties all agree that NARCO asbestos-containing products were present.  May 24, 2022 a.m. Hr'g Tr. 152:25-153:5.  And as Mr. Gleason explained, the case-by-case analysis that is done to determine whether the

Trust should infer that someone was exposed to a NARCO asbestos-containing product nearly always involves claims where the claimant worked at an Approved Worksite.  May 25, 2022 p.m. Hr'g Tr. 47:18-48:19.  In those situations, where the Trust knows NARCO asbestos-containing products were present and the claimant identifies a product that is sufficiently similar to a NARCO product, a reasonable inference can sometimes be made that the claim meets the exposure standard. *Id*. at 49:17-50:7.

39.    In fact, Honeywell previously recommended the payment of similar NARCO claims submitted to the Trust that did not mention a specific NARCO product in their exposure affidavits.  *See* Exhibit 99 at 02621 (discussing claims 1792765, 1783814, 1901807, 1898752, 1721301).  Similar to the Trust's current process as described by Mr. Gleason, Honeywell made this recommendation after reviewing several factors Honeywell found "relevant," including that the claimants worked at Approved Worksites.  *Id.*

40.    The evidence conclusively shows not only that the Trust has not violated the Stipulation, but also that the Trust's process regarding refractory inferences is reasonable.

## IV.    THE IR MODEL COMPLIES WITH THE TDP REQUIREMENTS

41.    At trial, Honeywell neither clarified nor provided any evidence substantiating its complaints about the Trust's implementation of the individual review ("IR") claim process.

42.    Indeed, Honeywell's argument about IR shifted focus at trial.  Prior to trial, Honeywell argued that an IR claimant must make a demonstration of "extenuating circumstances" before a claimant can proceed through IR and that the Trust violates the TDP if it allows a claimant to make an IR claim in the absence of "extenuating circumstances."  Honeywell Pretrial Brief at 14, ECF No. 335.

43.    Of course, this argument did not align with the text of the TDP.  The TDP provides that "a *claimant may opt* to establish a liquidated value for his or her claim involving Disease Level

III – VII that is greater than the applicable Scheduled Value by *electing* the NARCO Asbestos

Trust's Individual Review Process described in Section 4.3(b) below." Ex. B, TDP § 2.2

(emphasis added). The TDP provides that a claimant may proceed through IR "where the claimant

has extenuating circumstances that he or she ***believes*** warrant a liquidated value above the

applicable Scheduled Value [in ER]." Ex. B, TDP § 4.3(b)(1). Once a claimant has opted for IR,

the Trust may only "determine that the liquidated value of a claim that undergoes the Individual

Review Process is less than or greater than its Scheduled Value" in expedited review ("ER").

Ex. B, TDP § 2.2.

44.     At trial, Honeywell's witnesses agreed. Honeywell's expert Dr. William Choi

recognized it is the claimant's decision whether to submit their claim for IR or ER under the TDP.

May 24, 2022 p.m. 1 Hr'g Tr. 107:23-108:6. Honeywell's principal TDP negotiator, Mr.

Zimmerman, likewise testified that selecting IR is at the claimants' option. May 23, 2022 a.m.

Hr'g Tr. 166:3-7.

45.     Honeywell argued instead that the IR Model is too good of a deal for asbestos

claimants, with their expert describing the IR Model as "financially reward[ing] . . . the typical

claimant." May 24, 2022 p.m. 1 Hr'g Tr. 28:19-29:6.

46.     The evidence adduced at trial demonstrated why this, too, is incorrect. The

negotiated language of the TDP mandates that the average IR claim be paid more than an ER claim.

As described by Professor Abraham Wyner, the scheduled value that an ER claim is assigned is

not intended to be the full liquidated value of that claim. May 26, 2022 a.m. Hr'g Tr. 72:24-73:16.

Rather, scheduled value is a set value for claimants who choose the expedited and less complicated

process that is ER. *Id*. Compared to the scheduled value, the average value of an IR claim as set

by the TDP is substantially larger for every disease category:

| Scheduled Disease | Scheduled Values | Average Value[1] | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VII) | $75,000 | $200,000 | $1,000,000 |
| Lung Cancer 1 (Level VI) | $18,000 | $50,000 | $200,000 |
| Lung Cancer 2 (Level V) | None | $15,000 | $50,000 |
| Other Cancer (Level IV) | $9,000 | $25,000 | $100,000 |
| Severe Asbestosis (Level III) | $18,000 | $50,000 | $100,000 |
| Asbestosis/Pleural Disease (Level II) | $ 7,500 | None | None |
| Other Asbestosis Disease (Level I) | $ 1,200 | None | None |

Ex. B, TDP § 4.3(b)(3).  Given the mathematical reality of an "average," in order for the average IR claim values to be met, as mandated by the TDP, the majority of successful IR claims *must* receive more than a successful ER claim in the same disease category.  Even if one accepted Honeywell's argument that certain claimants should have been paid less in IR, it follows that other claimants also should have been paid more since the Trust is required by the TDP to maintain the average values for IR claims.

47.      Apart from the fact that this result is determined by the TDP itself, the evidence at trial addressed reasons why claimants may not want to submit themselves to the more rigorous process that IR presents, despite the possibility of a greater recovery in IR.  IR takes more time and requires the claimant to make a more elaborate claim submission.  May 26, 2022 a.m. Hr'g Tr. 70:18-72:22.  Further, the TDP contemplates that claimants may receive less than Scheduled Value through IR.  *See* May 26, 2022 a.m. Hr'g Tr. 70:23-25.  In fact, at least 75 percent of NARCO mesothelioma claimants choose to submit their claims through ER rather than IR.  May 26, 2022 a.m. Hr'g Tr. 71:18-72:2.

48.      The uncontradicted testimony was that the Trust's average payment under the IR model was consistent with the requirements of the TDP.  Accordingly, this Court should wholly reject Honeywell's claims relating to the IR model.

**CONCLUSION**

For the reasons set forth above, the TAC and the FCR respectfully submit that Counts I, II, III, and IV of Honeywell's Complaint along with the corresponding portions of Count VIII and associated relief should be denied.

Dated: June 14, 2022
Pittsburgh, Pennsylvania

STONECIPHER LAW FIRM

*/s/ George T. Snyder*
George T. Snyder, Esq.
PA ID No. 53525
125 First Avenue
Pittsburgh, PA 15222
Telephone: (412) 391-8510
Facsimile: (412) 391-8522
Email:  gsnyder@stonecipherlaw.com

-and-

CAPLIN & DRYSDALE, CHARTERED

James P. Wehner, Esq. (admitted *pro hac vice*)
Quincy M. Crawford, Esq. (admitted *pro hac vice*)
Todd P. Phillips, Esq. (admitted *pro hac vice*)
Katy Zendeh, Esq. (admitted *pro hac vice*)
George M. O'Connor, Esq. (admitted *pro hac vice*)
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 862-5000
E-mail:  jwehner@capdale.com
            tphillips@capdale.com
            mcrawford@capdale.com
            kzendeh@capdale.com
            goconnor@capdale.com

*Counsel for the NARCO Asbestos Trust*
*Advisory Committee*

SHERRARD, GERMAN & KELLY, PC.

*/s/ Jennifer P. Richnafsky*
Gary Philip Nelson (P.A. Bar No. 27603)
Jennifer P. Richnafsky (P.A. Bar No. 314764)
535 Smithfield Street, Suite 300
Pittsburgh, PA 15222
Telephone: (412) 258-6720
Facsimile:  (412) 261-6221
Email: gpn@sgkpc.com
         jpr@sgkpc.com

-and-


YOUNG CONAWAY STARGATT & TAYLOR, LLP


Edwin J. Harron (DE Bar No. 3396)
Sharon M. Zieg (DE Bar No. 4196)
Sara Beth A.R. Kohut (DE Bar No. 4137)
James L. Higgins (DE Bar No. 5021)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: eharron@ycst.com
         szieg@ycst.com
         skohut@ycst.com
          jhiggins@ycst.com


*Counsel for the Future Claimants' Representative*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>ALL MATTERS RELATED TO NORTH AMERICAN REFRACTORIES COMPANY, et al. in Case No. 02-20198, as affected by the May 24, 2013 Order Entering Final Decree entered at Doc. No. 7940<br>     Debtors | Misc. Case No. 15-00204-TPA<br><br>Chapter 11 |
| HONEYWELL INTERNATIONAL INC.,<br>     *Plaintiff,*<br>   v.<br><br>NORTH AMERICAN REFRACTORIES COMPANY ASBESTOS PERSONAL INJURY SETTLEMENT TRUST,<br>     *Defendant* | Adv. No. 21-2097 |

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that I served, or caused to be served, on June 14, 2022, a copy of the *The NARCO Trust Advisory Committee's And Future Claimants' Representative's Post-Trial Brief* upon each of the following persons and parties in interest at the address shown on the attached list.

Dated: June 14, 2022

Respectfully submitted,

**STONECIPHER LAW FIRM**

*/s/ George T. Snyder*
George T. Snyder, Esq.
PA ID No. 53525
125 First Avenue
Pittsburgh, PA 15222
Telephone: (412) 391-8510 phone
Facsimile: (412) 391-8522 fax
Email:  gsnyder@stonecipherlaw.com

Honeywell International, Inc. vs. North American Refractories Company Asbestos Personal
Injury Settlement Trust Case No. 21-02097 TPA
Service List

The following parties were served via the CM/ECF system and will not receive a paper copy of the
filing:

| |
|---|
| Erica Koehl Dausch, Esquire (North American Refractories Company Asbestos Personal Injury Settlement Trust) edausch@babstcalland.com |
| Michael P. Kruszewski, Esquire (Honeywell International Inc.) mkruszewski@quinnfirm.com |
| Arthur D. Martinucci, Esquire (Honeywell International, Inc.) amartinucci@quinnfirm.com |
| David W. Ross, Esquire (North American Refractories Company Asbestos Personal Injury Settlement Trust) dross@bccz.com |
| Gary Philip Nelson, Esquire (Future Claimants' Representative) gpn@sgkpc.com |
| Peter John Sacripanti, Esquire (Honeywell International, Inc.) psacripanti@mwe.com |
| Todd Evan Phillips, Esquire (North American Refractories Company Asbestos Personal Injury Settlement Trust Advisory Committee) tphillips@capdale.com |
| George T. Snyder, Esquire (North American Refractories Company Asbestos Personal Injury Settlement Trust Advisory Committee) gsnyder@stonecipherlaw.com |
| Jodi Hause, Office of the U.S. Trustee: jodi.hause@usdoj.gov |
| Joseph S. Sisca, Office of the U.S. Trustee: joseph.s.sisca@usdoj.gov |
| Jennifer Patricia Richnafsky, Esquire (Future Claimants' Representative) jpr@sgkpc.com |
| Stuart R. Lombardi, Esquire (North American Refractories Company Asbestos Personal Injury Settlement Trust (mao@wilkie.com) |
| Gavin Fung, Esquire (Everest Reinsurance Company and TIG Insurance Company) Gavin.Fung@kennedyslaw.com |
| Sander L. Esserman, Esquire (North American Refractories Company Asbestos Personal Injury Settlement Trust esserman@sbep-law.com |
| Holly S. Planinsic, Esquire (Witness Law Offices of Peter T. Niccholl) hplaninsic@hmhy.com |
| Joel M. Walker, Esquire (Interested Party, Vinson Law P.A.) jmwalker@nshmlaw.com |
| John M. Steiner, Esquire (Interested Party, Mazars USA LLP) jsteiner@leechtishman.com |
| Brian C. Thompson, Esquire (Witness Claim Resolution Management Corporation) bthompson@ThompsonAttorney.com |