FILED
10/31/22 12:58 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ALL MATTERS RELATED TO NORTH AMERICAN REFRACTORIES COMPANY, et al. in Case No. 02-20198, as affected by the May 24, 2013 Order Entering Final decree entered at Doc. No. 7940, *Debtors* | : : : : : : : | Misc. Case No. 15-204-TPA  Adv. No. 21-2097-TPA  Related to Doc. No. 412 |
| HONEYWELL INTERNATIONAL, INC., *Plaintiff* | : : : | |
| v. | : : | |
| NORTH AMERICAN REFRACTORIES COMPANY PERSONAL INJURY SETTLEMENT TRUST, *Defendant* | : : : : : | |

## MEMORANDUM OPINION AND ORDER

*Appearances:*  Eileen Bradley, Esq. for the Insurers
Michael Kruszewski, Esq. for the Plaintiff
David Ross, Esq. for the Defendant
Jennifer Richnafsky, Esq. for Lawrence Fitzparick, as Future Claimants' Representative
George Snyder, Esq., for NARCO Asbestos Personal Injury Settlement Trust Advisory

Presently before the Court for decision is the ***Motion to Have Certain Trial Exhibits Unredacted*** ("*Motion*"), Doc. No. 412, filed by four insurance companies who have been permitted to intervene for that limited purpose, and who have self-designated as the Public Access Proponents.[1]

---

[1] The insurance companies that filed the *Motion* are TIG Insurance Company ("TIG"), Everest Reinsurance Company ("Everest"), The North River Insurance Company, and United States Fire Insurance Company.

1

(For convenience and clarity these entities will be referred to collectively as the "Insurers"). Individual **Responses** to the *Motion* have been filed by Plaintiff Honeywell International, Inc. ("Honeywell"), Doc. No. 427, and by Defendant North American Refractories Company Asbestos Personal Injury Settlement Trust ("Trust"), Doc. No. 426. A ***Joint Response*** to the *Motion* was filed by Intervenors North American Refractories Company Asbestos Trust Advisory Committee ("TAC") and the Future Claimants' Representative ("FCR"), Doc. No. 425. For reasons explained below the *Motion* will be denied.

### *PROCEDURAL BACKGROUND*

This Adversary Proceeding involves disputes over various issues pertaining to the operation of the Trust, which is an asbestos settlement trust, funded by Honeywell, that was created pursuant to *11 U.S.C. §524(g)* and a confirmed bankruptcy Chapter 11 plan. TAC and FCR were permitted to intervene because they represent Trust beneficiary constituency groups.

The adversary proceeding was filed on September 28, 2021. On November 4, 2021, two of the Insurers (Everest and TIG) filed a motion seeking to intervene in the case on the basis that they were parties to a settlement agreement with Honeywell concerning their obligation to make payments to Honeywell respecting Honeywell's duty to fund the Trust, and that the outcome of the case could potentially disadvantage them in both practical and legal ways. On December 20, 2021, the Court issued a Memorandum Opinion and Order, Doc. No. 163, denying their motion to intervene and finding that Everest and TIG had failed to demonstrate either that they were entitled to intervene as of right or permissively.

The Parties to the Adversary Proceeding engaged in extensive discovery and trial in the adversary was scheduled for late-May 2022. On April 22, 2022, TAC and FCR filed a *Motion to Preclude the Filing or Admission into Evidence of Non-Party Claimant Law Firm Identifying Information* ("TAC/FCR Motion"). *See*, Doc. No. 333. The *TAC/FCR Motion* sought to require any such claimant law firm identifying information to be redacted from documents or other evidence introduced at trial, and where necessary to instead refer to a firm or attorney by a replacement identifier such as "Attorney 1" or "Firm A." In a footnote the *TAC/FCR Motion* stated that the Parties had all agreed among themselves that any identifying information as to individual claimants (as opposed to law firms and attorneys) – such as name, address and social security number – would be redacted from filings or exhibits offered into evidence. *See*, *id.* at n.1. Although not really addressed in the body of the *TAC/FCR Motion* itself, the stated request for relief included claimant information, so in essence it also sought an order confirming the Parties' agreement on that point.

The Trust filed a response to the *TAC/FCR Motion* indicating it did not oppose the requested relief, and Honeywell filed a response in opposition. On April 28, 2022, all of the Insurers filed a motion seeking leave to intervene for the limited purpose of opposing the *TAC/FCR Motion*, citing the need for transparency in the case because of public interest and concerns about conflicting and/or inaccurate information being filed by the law firms when they make claims to multiple asbestos trusts for the same claimant. *See*, Doc. No. 343. The Insurer's motion to intervene was silent with respect to the issue of individual claimant information. On April 29, 2022, the Court issued an order granting the Insurer's motion to intervene for the limited purpose of filing a response to the *TAC/FCR Motion* and being heard at the argument on it. On May 3, 2022, TAC and FCR filed

3

a "Notice" indicating that they were withdrawing the portion of the *TAC/FCR Motion* dealing with identifying information regarding lawyers and law firms, but were continuing with the remaining portion seeking an order confirming the Parties' agreement regarding the redaction of claimants' information from materials to be submitted at trial. *See*, Doc. No. 358

The Insurers filed a response to the *TAC/FCR Motion* on May 4, 2022, and a hearing on it was held on May 5, 2022. At that hearing, counsel for TAC argued that a "solution" had been reached because all of the Parties (Honeywell, Trust, TAC, and FCR) had agreed that identifying information concerning law firms and claimants in materials to be introduced at trial were not necessary for what the Court was being asked to decide, and it could therefore be redacted from such materials prior to submission into evidence at trial. Secondarily, counsel argued that even in the absence of such an agreement among the Parties the same redactions would be proper under the decision in *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733 (D. Del. 2018), aff'd. *sub nom.*, *In re AC & S, Inc.* (3d Cir. 2019). Counsel for the Insurers stated that his clients were not seeking the social security numbers, addresses, or medical records of claimants, but that they did believe the names and a description of the claimed injury/illness of each claimant should be available to public access.

The Court issued its decision on the *TAC/FCR Motion* on May 12, 2022, granting it in part and denying it in part. More specifically, the Court found that the materials at issue had not yet been filed in the case so were not "judicial records" for purposes of any right to public access and ruled as follows:

4

- The portion of the *TAC/FCR Motion* dealing with law firms and attorneys was denied as moot since TAC/FCR had withdrawn that part.

- The portion of the *TAC/FCR Motion* concerning the proposed redaction of claimant identifiers was granted, but without prejudice to the Insurers filing an appropriate motion following the trial seeking access to any redacted material that was received into evidence at trial.

- Any objection by the Insurers as to social security numbers, addresses and detailed medical information of claimants was denied as moot in light of the representation at the argument that the Insurers did not oppose redaction of that information.

*See*, Order of May 12, 2022, Doc. No. 374 at 8-9.

The trial proceeded as scheduled from May 23 through May 27, 2022, and the Parties presented a number of exhibits into evidence that had claimant information redacted from them. Following the trial, and at the direction of the Court, the Parties uploaded copies of their admitted Exhibits on the case docket. *See*, Doc. Nos. 390, 396, and 397. The *Motion* under present review was then filed by the Insurers on June 21, 2022.

### *The Motion and the Parties' Responses*

In the *Motion* the Insurers challenge the redactions that were made to 28 Exhibits that were admitted into evidence at the trial.[2] A summary attached to the *Motion* indicates that claimant names were redacted in all 28 of the challenged Exhibits. Other categories of redacted information

---

[2] The Exhibits in question are CR1, CR2, CR3, CR4, 24, 25, 27, 33, 34, 248, 334, 338, 379, 384, X, Z, AE, AK, AM, AO, AX, BR, BT, BU, CO, CP, DJ, and HQ.

as indicated on the summary, and the number of affected Exhibits as to each shown in parentheses, were: address (16), social security number (13), date of birth (9), case caption (8), personal representative (2), affiant identifiers (8), deponent identifiers (4), spouse name (3), directives (2), date and location of affidavit (1), law firm (1), document title (1), driver's license number (1), family members (1), coworkers (1), supervisors (1), witnesses (1), and military serial number (1).

Relying on the general right of public access, the public interest in the transparency of asbestos bankruptcies, their own interest in ferreting out fraudulent or defective claims made to the Trust, and the requirements of *11 U.S.C. §107* and *Fed.R.Bankr.P. 9037*, the Insurers seek to have much of the redactions agreed to by the Parties undone. In the proposed order filed along with their *Motion* the Insurers seek to have all of the redactions removed from the affected exhibits except for:

(1) Social Security numbers (except last four digits);
(2) dates of birth (except year);
(3) names of identifiable minors (except for their initials);
(4) financial account numbers (except last four digits); and
(5) medical information (except claimed disease, such as "mesothelioma," "asbestosis," or "lung cancer")

Doc. No. 413 at 2. This thus represents an expansion of what the Insurers were seeking as stated in their response and oral argument to the *TAC/FCR Motion* prior to trial when they said they were only interested in claimant names and a general description of their medical condition.

All of the Parties have responded to the *Motion*, with Honeywell and the Trust each filing an individual response and TAC/FCR filing a Joint Response. *See*, Doc. Nos. 425-27.

6

Honeywell acknowledges that it agreed to the redactions of the Exhibits in question at the request of TAC and FCR and goes on to state that it takes no position with respect to the *Motion*. The remaining Parties oppose the *Motion* and ask that it be denied. Argument on the *Motion* was heard on July 28, 2022, and it was taken under advisement.

### *LEGAL DISCUSSION*

It has long been recognized that in both civil and criminal matters there is a common law presumption that the public has a right of access to judicial records and to attend court proceedings. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). Whether this common law presumption of a right of access applies to a particular document depends on whether the document is a "judicial record," defined as a document "that has been filed with the court ... or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id*.

Whether the document in question was filed with the court is of the utmost importance in determining whether the common law right of public access applies. *See*, e.g., *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 434 (3d Cir. 2016) (the "act of filing, in fact, seems to be the most significant consideration"). It has thus been recognized that parties to a litigation may avoid the right of public access to a document by avoiding filing the document with the Court. *See*, *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993) where

the court, commenting on a prior case[3] in which a settlement agreement was held to be a judicial record stated that "it was the act of filing vel non that triggered the presumption of access, since the parties could have easily shielded their settlement from public scrutiny by filing a stipulation of dismissal pursuant to Fed.R.Civ.P. 41(a)(1)." *Id.* at 161.

Because the present case arises under the Bankruptcy Code the Court must also be mindful of *11 U.S.C. §107*, a provision entitled "Public access to papers," which provides the general rule that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." *Section 107(a)*. *Section 107* is a codification of the common law right of public access and it establishes a broad right of public access to all papers filed in a bankruptcy case, subject to certain limited exceptions. *In re A C & S Inc,* 775 F. App'x 78 (3d Cir. 2019). As noted by the *AC & S* court, a longstanding interpretive principle has been that when a statutory term such as *Section 107* is obviously transplanted from another legal source it brings the "old soil" with it, meaning that common law principles remain critical to the statutory interpretation and application of it. 75 Fed. Appx. at 79 (citing cases).

If anything, it appears that the basic right to public access provided under *Section 107* may be clearer of application than the common law right since filing of the document is the only criteria for triggering it, whereas the common law right depends on a finding that the document is a "judicial record," which some courts have found can also include materials that have somehow

---

[3] *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir. 1986).

been incorporated or integrated into the court's adjudicatory proceedings otherwise than by filing, or can exclude materials that even if filed were not relevant to the court's adjudication. *See* a discussion of that point at *In re Gitto Glob. Corp.*, 422 F.3d 1, 10 (1st Cir. 2005).

As a starting point, then, the Court must determine whether the material that the Insurers wish to access has ever been "filed." Unredacted versions of the relevant Exhibits with the claimant-related information the Interveners would like to see were delivered to the Court's Chambers prior to the final pretrial conference. As explained in the Court's May 12th Order:

> At present, the [relevant Exhibits in unredacted form] resides - somewhere among numerous other documents - only in approximately 15 thick binders that the Parties submitted to the Court's Chambers as *potential* trial exhibits in preparation for the final pretrial conference that was held on May 2nd. The Parties did not commit to the introduction at trial of any of the potential exhibits during the final pretrial conference, nor were any of the potential exhibits the subject of any discussion at the final pretrial conference. The Court has not yet even reviewed any of the potential exhibits, nor have they in any way been incorporated or integrated into the adjudicatory proceeding thus far ... Counsel for the [Insurers] acknowledged at the May 5th hearing on the [TAC/FCR] Motion that it is the parties, and not they, who will control what happens at trial. It is therefore impossible at this pre-trial juncture to know what, if any, claimant-redacted materials the Parties will seek to introduce into evidence.

Doc. No. 374 at 6-7 (emphasis added) (footnote omitted).[4] In the omitted footnote the Court noted

---

[4] It may also be worth pointing out that while it is the Court's usual practice to go through each potential exhibit individually at the final pretrial conference to determine whether it is relevant and necessary for trial, that was not done in this case at the suggestion of the Parties and based on their representations that the actual number of exhibits they intended to introduce at trial would be significantly less than what appeared in the 15 binders of over 20,000 pages they had sent to Chambers. *See Audio Transcript of Final Pretrial Conference* dated May 2, 2022, 10:54:52 to 11:03:03. Thus, none of the Exhibits that are the subject of the *Motion* were discussed in any manner at the final pretrial conference, nor has the Court ever viewed them.

9

that its standard "Pretrial Scheduling Order" requires parties to submit paper and electronic copies of potential exhibits prior to the final pretrial conference, but that such exhibits are not placed on the docket at that time. It further noted that after the conclusion of a trial the Court's usual practice is to direct each party to file on the dockets only its exhibits that were actually admitted at trial. That is exactly what was done here. *See*, Doc. Nos. 386-88. In other words, the unredacted versions of the Exhibits were never filed on the docket.

The following points sum up the status of the *unredacted* versions of the Exhibits that are the subject of the *Motion*:

- None of them were introduced at trial or admitted into evidence by any Party

- None of them has ever been attached as an exhibit to a motion

- None of them has ever otherwise appeared on the case docket

- The Court has never reviewed any of the redacted material in any of the Exhibits

- None of them has played any role in the Court's adjudication of the dispute between the Parties involved in this case

Given the above, the Court does not believe that the unredacted versions of the Exhibits can be considered to have been filed for purposes of *Section 107*, or to be judicial records for purposes of the common law presumption of a right of public access. There seems little reason to doubt that the Parties were acting strategically here by deliberately redacting material from the Exhibits they submitted at trial in the hope that doing so would prevent the public generally, and the Insurers in particular, from obtaining access to the redacted information via a right to access under *Section 107* or the common law. But is there anything wrong or improper in doing so? There does not seem to be.

In the first place, there is no general requirement that a party must introduce a complete copy of a document into evidence as an exhibit. In fact, the *Federal Rules of Evidence* expressly recognize that parties are free to introduce only select portions of a document into evidence. *F.R.E. 106*, embodying the so-called "rule of completeness," provides that if a party introduces part of a writing an adverse party may require the introduction at that time of any other part of the writing that in fairness ought to be considered at the same time. This clearly implies that in the absence of any such action by an adverse party the introduction of a partial document is proper. *See, e.g., Worden v. Tri-State Ins. Co.*, 347 F.2d 336, 341 (10th Cir. 1965) ("It is fundamental that one side may introduce only a part of a document or deposition in evidence, but of course it is also well recognized that the other side may later introduce more or the rest of any such document or deposition which was not introduced in evidence."). That is what happened in the present case – the redacted Exhibits, in effect parts of the complete Exhibits, were admitted into evidence without opposition by any of the Parties.

The Court sees nothing improper about parties to litigation tailoring their submission of exhibits so as to avoid the disclosure of information they would prefer to keep from public access if they do not believe the inclusion of such information is necessary to prove their case. For example, in the *Leucadia* decision as noted above the court commented that a litigant could have avoided the public disclosure of a settlement by filing a stipulation of dismissal rather than filing the settlement agreement. And in the *New Jersey Med. Gp.* case, also discussed above, the court noted that a dispute over whether the public should have access to a letter that had been e-mailed to the trial court judge could have been avoided if the sender had simply stated that the letter was being

sent as a matter of discovery rather than as a response to a request for a bill of particulars. In other words, the courts in those cases recognized that parties have a right to pursue their case in the manner as they wish (something the Insurers themselves acknowledged at the argument on the *Motion*), even with respect to choosing means that could affect the scope of what information will become publicly available.

The thinking behind this view was expressed well by another court facing a public access issue akin to the one involved in the present case:

> ... Parties are entitled to litigate issues that divide them, if they can fairly do so, without thereby exposing to public view confidential materials. A party may wish, for purposes of advancing its litigation position, to introduce a confidential document into evidence, attach it to a brief or other submission, or take a position that entitles its adversary to put that document into evidence. In those circumstances, the party is faced with the hard choice of either forgoing reliance on the document or submitting the document and seeking a court order placing the document under seal or closing the related proceedings. Choosing the latter path unavoidably entails risking the possibility that the court may find that the strict standards for sealing judicial documents or closing proceedings have not been met. *But when a party chooses not to rely on documents or other confidential information in court, the fact that the information is sufficiently relevant to the proceedings that it could have been introduced into evidence does not entitle the press or public to demand access to it or to put courts to the burden of evaluating whether the strict standards for rebutting the presumption of public access have been met. It makes no difference in this regard whether the party initially devised such a strategy or adopted it at the suggestion of the district court; the choice remains that of the litigant...*

*Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 167, n.15 (2d Cir. 2013) (emphasis added). *See also*, e.g., *In re Citibank Aug. 11, 2020 Wire Transfers*, 2020 WL 6782213, at *2, n.3 (S.D.N.Y. Nov. 18, 2020) (In general, if information in a document is not relevant to the issues in the case, and

no party asks the Court to consider it, the parties may – and should – redact the information without leave of Court to obviate any concerns about public access.").

If the Parties here believed that certain information about Trust claimants did not need to be submitted into evidence for the Court to be able to decide the issues before it, and therefore agreed among themselves to redact such information from documents before presenting them at trial, the Court does not find that to be improper under the circumstances of the case. It is of course understandable that the Insurers might feel somehow frustrated because information they would like to learn was not made part of the trial record or otherwise filed in the case, and perhaps the disclosure of such information would serve some public interest. In connection with the right of public access, however, it is not the Court's role to act as a knight errant searching for information of public interest that was relevant and could have been introduced into evidence in a case if only the parties had chosen to do so.

Here, the right of public access has been upheld, under both *Section 107* and the common law. The Insurers and the public generally have full access to the exact same version of the Exhibits as were presented at trial to the Court. Nothing has been sealed and there have been no further redactions made. In reaching its decision in the Adversary Proceeding the Court only relied on evidence in plain view of the public and not just the Parties. This critical fact clearly distinguishes the present matter from all of the other cases relied upon by the Insurers where there was some action taken, or attempted to be taken, to seal or restrict from the public material which had been part of the record before the court and presumptively relied on in some fashion by that court in rendering its decision.

For instance, in the *Motion* the Insurers cite to *Binh Hoa Lee v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir. 2021) as a case presenting a "private agreement to seal" and a purportedly "similar situation" to what occurred here. That, however, is a gross mischaracterization of the case. In *Binh Hoa Lee* the parties were permitted to present an extensive record of more than 4,000 pages to the court in connection with a summary judgment motion yet have a large portion of it (nearly 3/4) be sealed from public view on the grounds that it was confidential pursuant to party self-designations as such made under a consensual protective order for discovery that the court had approved.[5] In other words, the district court in *Binh Hoa Lee* viewed and considered material in connection with the summary judgment motion, i.e. "judicial records," that the public was then not permitted to see, and it was that which sparked the ire of the appellate court.

The Insurers have cited no case where the right of public access was found to require the judicial record to be enhanced beyond what was actually filed with the court, which is in effect what they are seeking here. The Court thus concludes that the *Motion* must be denied because the unredacted version of the Exhibits that the Insurers would like to see were never "filed" under *Section 107* and never became "judicial records" under the common law and thus there is no right of public access. Although the Court decides the *Motion* on that basis, it will also note that even if it had found a right of public access in the unredacted Exhibits it would have limited any required

---

[5] The pertinent language in the protective order stated that if any confidential information appeared "in any affidavits, brief, memoranda of law or other papers filed in the court in this action" the entire document was filed under seal. The *Binh Hoa Lee* court stated that "practically speaking" this provision of the protective order "doubles as the [district] court's sealing order." 990 F.3d at 419-20 and n.39.

14

disclosure at most to the claimants' names and general medical condition based on the representations made by the Insurers at the May 5, 2022 argument on the *TAC/FCR Motion* that such were the only categories of information that they wanted, which the Court views as a limiting waiver, as well as by concern over how the release of any further information about the claimants could create an undue risk of injury or identity theft to them.[6]

*AND NOW*, this **31st** day of **October, 2022**, for the reasons stated above, it is **ORDERED, ADJUDGED** and **DECREED** that the *Motion* is **DENIED**.

_____
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve;
    Eileen Bradley, Esq.
    Michael Kruszewski, Esq.
    David Ross, Esq.
    Jennifer Richnafsky, Esq.
    George Snyder, Esq.
    Jodi Hause, Esq.

---

[6] Counsel for TAC and FCR have represented at various hearings that a large portion of the claimant group consists of elderly individuals with significant medical and health issues, or their surviving spouses. Given the dates of asbestos exposure in the claim examples actually introduced at trial, as well as common knowledge concerning the nature of asbestos-related injuries, the Court has no reason to doubt the accuracy of that general description.